HENRIETTA M. J. WILSON

*v.*

JOHN E. WILSON.

[Filed March 17th, 1904.]

1. The duty of a deserted wife to invite her husband to return in order to be entitled to a divorce is not measured by the rule which is applied to the case of a deserted husband.

2. Where a husband deserted his wife because she refused to support him in idleness according to his desires, and the wife's acquiescence in his continued desertion arose from a belief that if he should return he would, notwithstanding any efforts on her part to effect a reformation, resume the course of conduct grossly violative of his duty to her of which he had been previously guilty, causing her constant physical or mental suffering, such acquiescence was not a voluntary consent to the husband's desertion, so as to preclude her from a divorce on that ground.

On petition for divorce.

*Mr. Nicholas W. Bindseil,* for the petitioner.

STEVENSON, V. C.

In this *ex parte* case the master reports that the defendant has been guilty of willful and continued desertion for more than two years, but further reports that such desertion has not been obstinate—that the separation has not been against the will of the petitioner. The petitioner excepts to the report and the question is thereby raised whether the state of the petitioner's mind during the separation has been so far that of assent as to bar her suit.

In my opinion the evidence does not show such assent on the part of the petitioner, the wife, as would be necessary to prevent the conduct of the defendant, the husband, from constituting the matrimonial offence defined in our statute as a cause for divorce. The defendant had grossly violated his duty to the petitioner. The evidence fully sustains the master in reporting that the defendant had "failed to contribute as he should have done to the support of his wife and family; * * * that he was lazy and satisfied to live with his wife at her expense." The defendant's drunkenness and idleness interfered with the industrious efforts of the petitioner to support her family, including her worthless husband, by dressmaking and keeping a boarding-house. When the defendant failed to pay the rent for the house, and the necessities of the petitioner's condition induced her to put a boarder in the room which the defendant had for a time occupied by himself, he refused to accept the

Wilson *v*. Wilson.

narrow quarters, which appear to have been the best which the petitioner could furnish to him, and he therefore deserted the petitioner—left the home which she was providing for him with the avowed intention of permanently remaining away, where he could be accommodated more to his taste. He left her to struggle with somewhat hard conditions of life alone. He has remained away and his state of mind is not open to any doubt. He plainly indicated that he would not return to his wife and live under the conditions created by his own violation of duty, and it does not appear that he would return under any conditions. He has expressed no penitence, no regret, no purpose or desire to live with his wife and even try to perform his duty to her.

An injured wife, under such circumstances, is not bound to invite her husband back—to invite him to return and resume a career of brutality, drunkenness or other misconduct which has made her life miserable. It is the duty of the husband to repent and signify his repentance to his wife. Cases like the present one, where a husband has ended a long period of persistent violation of duty to his wife by willfully deserting her and by remaining so separated from her for two years, involve several nice questions in regard to the effect of the wife's state of mind as affecting her right to a divorce. It is well settled that the duty of the deserted wife to invite her husband back is not measured by the rule which is applied to the case of the deserted husband. *Sargent* v. *Sargent, 9 Stew. Eq. 644; Costill* v. *Costill, 2 Dick. Ch. Rep. 846.*

Where the wife is the deserted party, the examination of her state of mind during the continuance of the desertion involves the discussion of two questions:

*First.* Whether the assent of the wife has in any degree caused the continuance of the desertion?

*Second.* Assuming that the assenting mind of the wife has not in the slightest degree caused the continuance of the desertion, must it be deemed to bar her from making any complaint under the principle *volenti non fit injuria?*

The evidence in this case does not justify the inference that the desertion of the defendant has been in the slightest degree

caused by the petitioner's state of mind. He probably, if he is
a fairly intelligent man, has inferred that his desertion was
submitted to by his wife with entire cheerfulness, in view of the
presumption which she had a right to entertain that his return
would be accompanied by the same gross and continuous viola-
tion of duty on his part which he had formerly committed. Not
a fact is presented from which this derelict husband could prop-
erly have drawn the inference that if he had returned to his
wife with even a promise of reform he would not have been
gladly received.

The question of importance in this case, however, is whether
the state of mind of the petitioner with reference to the con-
tinued separation of her husband from her has been of such a
character that she must be deemed as consenting to the matri-
monial offence of which she now complains.

Where the acquiescence of the wife in the continued desertion
of her husband arises from a reasonable belief on her part that
in case her husband should come back to live with her he would,
notwithstanding any efforts on her part to effect his reformation,
resume a course of conduct grossly violative of his duty to her,
and causing her constant physical or mental suffering, such
acquiescence is not a voluntary consent to the matrimonial
offence of desertion. It is practically a consent obtained by
duress.

The doctrine of constructive desertion, applied to cases where
the husband drives the wife from his home by cruelty and thus
causes a separation, would be entirely untenable as a part of our
divorce law if the consent of the injured wife to the continuous
separation in such cases could be deemed a voluntary consent
so as to bar her suit.

When a husband has persistently treated his wife with ex-
treme cruelty, and then has been guilty of willful and continued
desertion of his wife for the statutory period, it would be a most
astonishing condition of the law if he could defeat his wife's
suit for divorce by eliciting from her a confession that she not
only acquiesced in the separation, but preferred that it should
continue. What the wife in fact does in such a case is simply

to make a choice between two evils. As between having a husband living with her and beating her every day and having the same husband living away from her, she naturally prefers the latter condition.

I shall not undertake to formulate any definition of the nature and extent of the husband's violation of duty to his wife which will prevent her acquiescence in his desertion of her from operating as a bar to her suit for a divorce. It would seem that the measure of the husband's guilt need not equal that which is necessary to justify the wife in leaving his home and then to enable her to maintain a suit for divorce on the ground of his desertion. Where a drunken, lazy husband has chosen to spend his earnings in dissipation while he has been boarded and lodged at the home maintained by his industrious wife, and then at length, when his accommodations fail to satisfy his demands, has willfully deserted his wife, in my opinion, the consent of the wife to such separation, which has not in the slightest degree caused its continuance, does not bring her within the scope of the maxim *volenti non fit injuria.*

Nor does it seem necessary in this case to discuss the question how far the deserted wife is under an obligation to endeavor to procure the reformation of her husband so that their life together might be free from the evils from which she formerly has suffered. There is no evidence in this case that if the petitioner had made every effort within her power to reform her husband such efforts would have been attended with the slightest chance of success. The evidence seems to justify the inference that the defendant, after his desertion of his wife, abandoned himself to drunkenness and idleness; that he had no desire to reform; that he entertained the most vindictive feelings towards his wife, and that no persuasions from her could have changed his character or the motives and sentiments which governed his life.

In the very careful and accurate report of the master, it is pointed out that the petitioner says in her testimony, when referring to the separation of herself and her husband, "one was too stubborn to give in to the other." The petitioner, how-

ever, immediately goes on to explain that the stubbornness to which she referred related to her preference to have a husband who had treated her as had the defendant remain away from her as long, at least, as there was no prospect of any reformation on his part. The true meaning of the witness was brought out more fully by the master when the petitioner was recalled for the last time. Being asked why she had never done anything to bring about a reconciliation, she answered:

"Well, in the first place, because he said he would never live with me again, and the next reason because I knew that he wouldn't be any support to me at all; he wasn't doing anything to help himself and I knew that it was against my business, because I had lost some of my people on account of his conduct, and I was afraid that if he came back I wouldn't be able to make a living at all."

The witness further testified that the above were the "main reasons" why she did not undertake to bring about a reconciliation with her husband. It is plain that her reasons were sound and sufficient. She saw, in brief, no hope of any reformation on the part of her husband, so that to bring him back to her home would only replace a burden of labor and misery upon her life. And yet, further answering the master, the petitioner went on to testify that if her husband had come back to her she would have taken him in.

A number of cases in this court and in the court of errors and appeals support or suggest the views which I have expressed, and I know of no New Jersey case which stands at present as a precedent to the contrary. *Sargent* v. *Sargent, supra; Mc-Vickar* v. *McVickar,* 1 *Dick. Ch. Rep.* 490; *Smith* v. *Smith,* 10 *Dick. Ch. Rep.* 222; *Van Wart* v. *Van Wart,* 12 *Dick. Ch. Rep.* 598; *Jeroleman* v. *Jeroleman,* 54 *Atl. Rep.* 166.

In *Smith* v. *Smith, supra,* Vice-Chancellor Pitney holds "that the state of mind of the complainant, having been caused by the misconduct of the defendant, is no bar to her right to a divorce against him on account of his willful and continued desertion."

I shall advise that the petitioner is entitled to a divorce.