MOSES D. HUDSON, *Appellant*, v. FRANCES E. HUDSON, *Appellee*.

1. In a suit for divorce upon the ground of wilful, obstinate and continued desertion for the statutory period, it is immaterial which of the married parties leave the marital home, the one who intends bringing the cohabitation to an end commits the desertion. The party who drives the other away is the deserter, and a wife may drive her husband away.

2. The meaning of the statutory ground for divorce, wilful, obstinate and continued desertion for more than one year, considered and discussed.

This case was decided by the court En Banc.

Appealed from the Circuit Court for Santa Rosa County.

34—Vol. 59.

The facts in the case are stated in the opinion of the court.

*J. P. Stokes,* for Appellant;

No appearance for Appellee.

PARKHILL, J.—The appellant filed his bill of complaint praying for a decree dissolving the bonds of matrimony then existing between him and his wife, the appellee, upon two grounds: wilful, obstinate and continued desertion for more than one year, and for extreme cruelty.

A decree *pro confesso* was duly entered against the defendant for her failure to plead, answer or demur to the bill of complaint on the rule day succeeding that to which process of subpoena was returnable. The cause was referred to Hon. C. H. Laney, as special master, who made a report of the testimony with recommendation that the relief prayed be granted. Upon consideration of same, the chancellor dismissed the bill and complainant appealed.

There is no conflict in the testimony. The facts are not denied or disputed. It appears that ever since these parties were married the complaining husband was without fault, but, during the last few years of their married life, the defendant was very quarrelsome and would fuss and curse the complainant almost every day. Upon one occasion the defendant tried to induce one Jane Thompson, daughter by a former husband, to put poison in the bread intended for the complainant to eat. Jane refused to do so and told Moses Hudson about it. Upon another occasion the defendant tried to hire a man to kill the complainant, and again about three months before the final separation of the parties, the defendant tried to get one C. C. Thompson to go hunting with complainant and shoot him,

pretending that the gun was dischárged accidentally. Finally, one morning in May, 1905, the defendant "flew into a violent rage" at the complainant about a matter for which he was not to blame, publicly cursing and abusing him, much to his embarrassment, continuing this conduct all the morning until he left home to avoid her. Hoping that she would be friendly, Hudson returned to his home in the afternoon of that day, but Mrs. Hudson was just as bad as when he left her in the morning, cursing and abusing him shamefully. The complainant testified: "She ordered me out of the house and told me to leave and never come back, that she never intended to live with me again and that she did not want to have anything to do with me. I argued the question with her and tried to show her where she was mistaken but she would not hear me. She ordered me out again, and again told me never to come back and that she would never live with me again. There being nothing else for me to do I left. I went down to my boat and lived there the best I could." He was asked, "What was the last thing she said to you?" "Moses Hudson, you God damn son of a bitch, you can't call me wife any more, and I will never live with you another day," was her answer. According to the testimony of one of the witnesses, "She quit him. She called him a God damn son of a bitch. She told him he could never call her wife again. She told him he had to go. He went off in the morning and came back in the evening. She cursed him out again and told him that she didn't want him around the place. He went down to the boat and lived there." The parties have not lived together since that time, a period much longer than the one year prescribed by the statute.

We think the testimony sustains the ground of a wilful, obstinate and continued desertion for more than one year.

First, as to desertion. Mr. Bishop, in the second volume

of his work on Marriage and Divorce, page 597, says: "It is immaterial which of the married parties leave the marital home, the one who intends bringing the cohabitation to an end commits the desertion. Thus,—to drive away the wife from the house is to desert her." The party who drives the other away is the deserter, and a wife may drive her husband away. 5 Am. & Eng. Ency. Law, 803; see Gray v. Gray, 15 Ala. 779, 784; Skean v. Skean, 33 N. J., Eq. 148.

The testimony shows that the defendant was the one who intended to bring the cohabitation to an end. After years of cursing and abusing her husband, endeavoring to take even his life, and with violent language and epithet most opprobious she drove this patient, non-offending man from the marital home. There is no doubt about the meaning of her declaration: "Moses Hudson, you God damn son-of-a-bitch, you can't call me *wife* any more, and I will *never* live with you *another* day. The wife was the deserter.

Was the desertion wilful? Wilful means on purpose, intentional. As we have seen, the defendant intentionally and on purpose and wilfully brought the cohabitation to an end. Crawford v. Crawford 17 Fla. 180.

Was the desertion obstinate? Obstinate means determined, fixed, persistent. During all the years of the separation, the deserting wife was determined, fixed and persistent in putting an end to the cohabitation, in her desertion, although her husband lived near by in his boat "the best he could." All that time, she made no effort to bring about a reconciliation or a restoration of the marital relations, which she had terminated.

In New Jersey, where the desertion must be, like here, "wilful, continued and obstinate," in Jerolamon v. Jerolamon, .. N. J. Eq. .., 54 Atl. Rep. 166, where the husband being in fault was the deserter, the court said: "The question in the case is whether the separation was continued

and obstinate on his part for two years after that time. The separation in this case was, as I have stated, legally chargeable to the husband, and under the rule applied in cases of this character it was the duty of the husband to reform his habits and after such reformation and within the two years, seek out his wife, and apply to return, giving her reasonable assurances of the sincerity of his reformation, and of her probable safety in resuming marital relations." In McVickar v. McVickar, 46 N. J. Eq. 490, 19 Atl. Rep. 249, 19 Am. St. Rep. 422, the court said: "If, however, the husband's cruelty was not of such intensity as to amount to desertion, still it was such as to justify the wife in temporarily separating herself from him, and it was his duty to seek a return. This he did not do, but for many years remained entirely passive, manifesting no interest in her welfare or desire to resume marital relations. This under the circumstances constituted desertion and entitles the wife to a decree."

We are not unmindful that the marital relation is recognized, both legally and morally, as imposing obligations pre-eminently on the husband. As the husband generally does the courting before marriage he may well continue it afterwards. As pointed out in Sargent v. Sargent, 36 N. J. Eq. (9 Stewart) 644, society, so far at least, has regarded his duty in maintaining and preserving those relations as of the superior order. "Not that the tie is more sacred or less binding on the part of the wife, but where the act of desertion occurs without reason on his part and without fault on her side, the same efforts to restore harmonious relations are not expected from her as would be from him, if the case were reversed." The principle that the integrity of the matrimonial tie requires this of the husband is stated by the chancellor in Schanck v. Schanck, 33 N. J. Eq. (6 Stewart) 363. That was a case where a wife in anger told her husband that he

"might go his way and she would go her's," and gave other evidence of her desire that they should live separate, but immediately retracted and besought him not to go, and he, notwithstanding her entreaties, left her, in a passion, and, without any attempt at reconciliation and without contributing anything towards her support or even communicating with her in any way, remained away from her for three years, living all the time in the same county with her; and the court held that she was entitled to a divorce for desertion. "Under the circumstances of the case," said the court, "the husband owed a duty to his wife—a duty to society—to avoid, as he well might have done, the consequences which his punctilious resentment (so exacting that he would not even condescend to propose the terms on which it might be appeased), has inflicted upon his wife  *   *   *  . It is clear that she never intended to desert him. Her letters offered in evidence by him contain the very strongest expressions of affection, and were undoubtedly sincere. Were he before the court asking a divorce from her on the ground of desertion, his application would be denied for the reason that he has been derelict in his duty towards her under the circumstances." And so would we say, in the instant case, upon similar facts. In view of the facts stated in Wilson v. Wilson, 66 N. J. Eq. 237, 57 Atl. Rep. 552, the court said, "An injured wife, under such circumstances, is not bound to invite her husband back—to invite him to return and resume a career of brutality, drunkenness or other misconduct which has made her life miserable. It is the duty of the husband to repent and signify his repentance to his wife."

In Trall v. Trall, 32 N. J. Eq. 231, this rule is correctly stated: "Even if a wife deserts without cause, and afterwards realizes that she has acted hastily or foolishly, and would return if the way was opened for her, but the hus-

band refrains from doing anything to induce her to return, for the purpose of making her absence a ground for divorce, her desertion is not obstinate, and not, therefore, a ground for divorce.   *   *   *   .   In such a case she remains away, not of her own will, but because she cannot get back without danger of being repulsed or subjected to the pain of humiliation that no husband has the right to inflict upon his wife." As peculiarly applicable to the instant case, the court went on to say: "But a careful study of the temper and disposition of this woman, as portrayed in the evidence has satisfied me that any effort on the part of her husband to induce her to return, would most probably have resulted in strengthening her determination to remain away." And the court held that a husband is not bound to attempt to induce his wife to return, when it is clear any effort in that direction would be unavailing. Continuing, the court said: "The case is a very sad one. The parties are both well advanced in years. Their married life covers a period of more than thirty years. The ties that once bound them together were strengthened by the birth of a child, who is now a man. I think most husbands and wives would regard death as a much more preferable termination of thirty years of married life, than a divorce. But the question presented for judgment is one of blended law and fact, and not of sentiment or feeling, and must be decided by the law and facts." The appellate court, in this case, sustained the decree of the court below granting the husband a divorce.

And so, as decided in Lammertz v. Lammertz, 59 N. J. Eq. 649, 45 Atl. Rep. 271, "Where the wife absented herself from her husband's home for more than two years, and such absence is not justified by her husband's

conduct towards her, and the wife's conduct is such that little hope was left of a permanent reconciliation, it will be considered that the desertion is obstinate and divorce will be decreed, though no proof was offered that the husband sought her and urged her return."

Recognizing the general rule that the husband, being the head of the household, is bound to do what he may, as a just man, to bring about his wife's return or a restoration of the marital relations even where the original separation was wrongful on her part, yet we think, under the peculiar circumstances of the instant case, the wife's conduct was such as to make clear to any one that any further effort by the complainant to induce his wife to return to him would have been unavailing; and that his right to a decree is not dependent upon his having done any more than was done by him in that direction. Indeed, as was said in Trall v. Trall, *supra*, "any effort on the part of her husband to induce her to return would most probably have resulted in strengthening her determination to remain away." And the evidence justifies us in adding that, perhaps, any further effort on his part to have continued the marriage relation would have caused her to end it by taking his life.

Was the desertion continued for one year? Yes, for nearly four years prior to the filing of this bill the wife's desertion continued, as we have seen. From the time the defendant put an end to the cohabitation, she did not live with her husband another day, as she declared would be the case when she drove him away.

We think the defendant's desertion was wilful, obstinate and continued by the wife for more than one year, and that under the facts of this case, as we gather them from the record, we are constrained to hold that the complain-

ant is entitled to his decree, and that the chancellor erred in dismissing the bill.

The decree is reversed.

All concur except TAYLOR, J., absent on account of illness.