ALLEN, Chief Judge.
The appellant filed an action for divorce on the grounds of desertion against the appellee-defendant. After testimony was taken the lower court entered a final decree granting him a divorce; awarded the defendant-wife $20 per week child support; ordered him to convey his interest in the parties’ home in Pennsylvania to the wife and to pay off the existing mortgages of $11,000 within 60 days; and awarded the wife’s attorney fees in the amount of $200.
The appellant has appealed from that portion of the decree ordering him to pay off the $11,000 in mortgages within 60 days. The defendant-wife has cross-appealed from that portion of the decree granting the divorce, and from the portion awarding $20 per week child support and the $200 attorney’s fees.
The parties were married in Pennsylvania during 1947. Two children were bom of the marriage, Cynthia, six years of age, and Cathy, four years of age. The parties lived in Brackenridge, Pennsylvania, from 1947 to 1953, during which time they operated a grocery store as their livelihood. Mr. Bednar’s father assisted them in building the store and was repaid monthly over a period of time. During this period the parties lived with Mr. Bednar’s mother and father.
In 1953 the couple had a house constructed in an adjoining town known as Natrona Heights, Pennsylvania. The funds for the house were derived from the profits of the store plus a present mortgaged debt to Peoples Mutual Bank of Tarentum in the amount of $1,150.00. The couple lived in the new house from 1953 to 1956.
During 1956, Mr. Bednar told his wife that he wanted to borrow $10,000 from his father to remodel the grocery store. Mrs. Bednar signed the necessary papers and the loan was obtained, secured by a second mortgage of $10,000 on the house. The store was never remodeled and only a small portion of the money was actually expended on the store. Mr. Bednar has still not accounted to anyone as to what happened to the balance of the $10,000.
Bednar closed the grocery store in May, 1957, and sold the equipment for $2500. He stated he did not remember what he received for the stock. While the parties operated the store, Mrs. Bednar worked approximately 60 to 65 hours per week in the store for which she received no actual wages.
On September 28, 1957, while his wife and children were out shopping, Bednar packed his clothes and belongings, lawn mower and tools, and came to Florida and has lived with his mother and father in Vero Beach since that time, where they own and operate a motel. Before leaving Pennsylvania, Bednar had the telephone cut off, closed out charge accounts at the local stores, removed the safe from the house, and closed out their checking account.
Sometime during the latter part of 1957, a desertion and non-support charge under the Uniform Reciprocal Enforcment of Support Law, Chapter 88, Fla.Stat., F.S.A., was filed against Bednar in the lower court but service was never perfected on him. Still later Bednar began sending $10 to $15 a week to his wife in Pennsylvania.
Since Bednar has been in Florida he has earned $57.50 a week as a butcher but is presently unemployed. He testified that he has made repeated efforts to get his wife to come to Florida and filed in evidence photostatic copies of letters written *458 to:his wife to support his desertion charge. It appears that the wife objects to living with his parents but he states that he will live anywhere in the State. The record discloses, however, that he has no funds to j>ay his wife and children’s transportation ;to Florida although he stated that he could borrow some money for that purpose.
Mrs. Bednar did not appear in defense of the case, thus the defense presented no testimony. Mr. Bednar would not give any direct answers to questions and answered in many instances: “I don’t know.” It was therefore very difficult for the lower court to ascertain the actual financial status of the parties other than what is delineated above.
The lower court awarded $100 temporary attorney fees plus $100 in the final decree, to the wife’s attorney. In addition to assigning error on the cross-appeal as to the inadequacy of these fees, the ap-pellee has filed a motion asking this court to set a reasonable fee for the work on this appeal and the cross-appeal in this court.
The appellant, Clement T. Bednar, alleged in his complaint below as follows:
“3. Complainant further represents unto the Court that the said Defendant, Elizabeth Bednar, did after the said marriage, to-wit, on or about the 28th day of September, 1957, wilfully desert and absent herself from the Complainant at Natrona Heights, Pennsylvania, without any cause, and that such desertion has continued up to the present time.
“4. Complainant further represents unto the Court that the said desertion has been wilful, obstinate and continuous desertion since September 28, 1957.”
The appellant, after testifying in the lower court on direct examination that his wife had wilfully deserted him on the 28th of September, 1957, testified on cross-examination as follows:
“Q. Why didn’t you bring her with you when you left Pennsylvania September 28, 1957? A. Because my wife refused me in August, 1957, to even bring her down on a vacation.
“Q. But on the day you left you gave no indication to anyone that you were leaving? A. I left a note, sir.
“Q. You left a note?. I am talking about prior to the time you left. All you did was you left a note after you had gone, you knew that they would not get it until after you had gone and you didn’t tell them where you were going, is that right ? A. That is right.
“Q. You just walked out the front door, isn’t that right? A. That is right.
“Q. And you took your personal clothing and your personal tools and you had already taken the safe out of the house, hadn’t you? A. Yes, sir.
“Q. Hadn’t you previously had the telephone disconnected? A. Yes sir.
“Q. Hadn’t you gone around to various merchants and stopped your wife’s charge accounts? A. Yes sir.
“Q. Hadn’t you also stopped her charge account at the grocery store? A. Yes sir.
“Q. Did you know of any money that she had at the time? A. I don’t know, sir.
“Q. You don’t know? You don’t know that she had any? A. I don’t know, sir.
“Q. Do you know that she has applied for public welfare in the State of Pennsylvania to feed your children ? A. That is what I understand.
“Q. And that didn’t concern you? A. I sent her money, sir.
“Q. $86.40 a month, that is what you have sent for your wife and two *459 children, is that correct? A. That is correct.”
The foregoing testimony on the part of the appellant precludes any showing of desertion on the part of the wife as of September 28, 1957, which date apparently the appellant relied on after his arrival on the first of October, 1957, in Florida at the home of his parents. This is further illustrated by the fact that we find him immediately writing letters back to his wife, having the letters photostated, registered and with return receipt requested, which is an unusual situation to that of the normal husband in writing to his wife and children. These letters were filed in evidence as exhibits.
Nowhere in this record does the evidence show at what precise time that the deserted wife status ceased and that of the wronged husband began. The complaint in this case was filed on the 6th of October, 1958, so the wife’s status must have changed by the 7th of October, 1957, for there to have been a wilful, obstinate and continued desertion of the appellant by his wife for a year.
The following letters or excerpts therefrom were filed as exhibits by the plaintiff-appellant, and it is from these letters that the appellant attempts to convert his departure from the domestic scene into a wilful desertion on the part of the appellee-wife, as a ground for his divorce, which was awarded him by the lower court.
The undisputed testimony shows that the plaintiff left his home in Pennyslvania without notice to his wife except a note left for her that he was gone. This date is shown to be September 28, 1957. The evidence shows that he withdrew all the money from the bank and in addition notified the stores where they traded not to permit his wife further credit. In fact, he left his wife and two children destitute.
It is admitted that the Bill of Complaint in this case was filed the 6th of October, 1958. It must be noted that to'obtain a divorce on the grounds of wilful desertion the evidence must show that the party charged wilfully deserted the offended spouse for a period of over one year between the date of the commencement of the wilful desertion and the date of the filing of the complaint. Therefore, in this case, the wilful desertion on the part of the wife must start at some period of time after the 28th of September, 1957, and to be of a duration of one year, expired before October 6, 1958.
On October 2, 1957, the appellant wrote his wife the following letter:
“Dear Betty:
“I am writing you with the expectation that you will reconsider and join me here in Florida.
“I have definately (sic) established residence here and am seeking employment to support myself, you and the children.
“I honestly had hoped that you and the children would come with me when I left.
“I am feeling much better in this warmer, climate with the aid of the ocean to help my legs and back, as the doctor said, I probably would.
“I sincerely hope you will reconsider moving here for I do miss you and the children very much.
“All my love to you and the children and am anxiously awaiting your reply.
“Love,
“Clem.”
It is rather interesting to note that with each of the letters sent to his wife and filed as exhibits, that photostatic copies were made of these letters before mailing and they were registered with return receipt requested. A very unusual type of correspondence between husband and wife. The first of these letters, according to the receipt attached thereto, was received October 7, 1957, so even if this letter could be considered as a factor in putting the defendant on notice that her husband was demanding that she now come to Florida and *460 accept his domicile as hers, it is one day-less. than the year required for a wilful desertion. But, of course, this letter could not be considered as a starting date of the wilful desertion.
The next letter was written October 19, 1957, and received October 24, 1957. This letter follows the line of attempting to persuade his wife and children to join him in Florida.
In the next to the last paragraph of this letter appears the following:
“Going to ask you Betty, what type of transportation would you prefer bus, train or airplane? I’ll make the necessary arrangements and send you the tickets.
“Hoping to hear from you soon, saying that you, children will except (sic) my offer in joining me here.”
December 9th, 1957, another letter was written by the plaintiff. In this letter appears, among other statements, the following :
“ * * * I would like to take your offer of coming which I wouldn’t know until the week before Xmas so I’ll keep my finger crossed.
“Betty, I received a letter from my Atty. Mr. Cavalier stating you applied for Public Assistance but was refused. Inclosed is a check for the balance of 71.40 plus 15.00 I sent you on Dec. 3rd to make the necessary total of $86.40. He stated this is the amount of support I should pay. I don’t know how the figure derived but maybe you can explain it.
“It sure would be wonderful if you and the children would join me here in Florida for I miss you three very much. Just like you said in your other letter lets act sensible and grown-up.
“Here is a big kiss for Cindy and Cathy.
“X Love to All
“Daddy.”
The next letter in evidence was dated April 28, 1958. This was a rather lengthy letter which stated that he had received the two letters of his wife on April 20th and April 23rd. In this letter he stated that this was the “last time I am asking you to join me with the children in Florida. So I want an answer to my question why you won’t come to Florida.”
The above letters, or excerpts therefrom, constituted the evidence from which the court was required to deduce wilful, obstinate, and continued desertion for one year on the part of the appellee-wife. The appellant’s own admission shows that he “* * * like the Arabs,” * * * “Shall fold their tents, * * *, And as silently steal away,” left his wife on the 28th of September, 1957.
The father and mother of the appellant were offered as witnesses to corroborate the testimony of the appellant that his wife wilfully deserted him. The father, Joseph Bednar, testified as follows:
“Q. I will ask you this — Do you know his wife? A. Yes.
“Q. Has she lived with him any time within the past year or since he has been in Florida? A. No sir.
“Q. But he is living there in Vero Beach, is that right? A. That is right.”
The mother of the appellant, Mary Bed-nar, testified as follows:
“Q. Did your son come down, do you remember when he moved to Florida, or did he move to Florida? A. He came in October.
“Q. The first of October ? A. No, the last. The last of October.
“Q. Was it October or September? A. September.
“Mr. Walker: Let her testify. A. Excuse me, September. The last of September.
*461 “Q. The last of September. Has he lived here continuously since the last of September, in Florida? A. Yes.
“Q. Has his wife lived here any with him? A. No.
“Q. I will ask you this. Has she visited him here? A. No, she didn’t.
“Q. You have seen your son quite often, have you, since he has been here? A. Yes.”
It is apparent that the testimony given does not corroborate, under the facts of this case, any evidence of wilful, obstinate and continued desertion on the part of the defendant from the plaintiff.
In Kooman, Florida Chancery Pleading and Practice, § 226, page 519, the author states:
“One of the grounds of divorce, under the statutes of Florida, is the willful, obstinate, and continued desertion of the plaintiff by the defendant for one year. Desertion, within the meaning of the statute, consists of three things: an actual cessation of cohabitation for the period specified, the willful intent of the absent spouse to desert, and the desertion by that spouse against the will of the other. The essence of the wrong of desertion thus consists in the refusal of a husband or wife to live with the other, when that other wants the deserting spouse to live with him or her.
“As used in the statute, the word willful means intentional, and obstinate means determined, fixed, and persistent. * * *
* * * * * *
“In a suit for divorce on the ground of desertion, it is immaterial which of the parties leaves the marital home. The one who intends bringing the cohabitation to an end commits the desertion. The party who drives the other away is the deserter, and either may drive the other away. Where a wife severs the marital relation, and leaves her husband, a very strong showing of a willful and determined effort to force her to leave, or by wrong doing, rather than poverty, to make life so unbearable that she cannot continue to live with him, must be established in order to justify a divorce.
“Where there has been a willful, obstinate, and continued desertion by either a husband or wife for a period of one year, there is no obligation on the part of the deserted spouse to thereafter resume marital relations, and the refusal to do so does not extinguish the cause of action for divorce.”
See also Hudson v. Hudson, 59 Fla. 529, 51 So. 857, 29 L.R.A.,N.S., 614, 138 Am.St. Rep. 141, 21 Ann.Cas. 278; Stevenson v. Stevenson, 84 Fla. 678, 94 So. 860; Seward v. Seward, 145 Fla. 701, 200 So. 78.
In the case of Miller v. Miller, Fla.1952, 60 So.2d 926, 927, a husband brought a complaint against his wife for a divorce and she filed a counterclaim. The circuit court rendered a judgment for the husband and the defendant appealed. The Supreme Court held that under the evidence, the wife was entitled to a divorce from her husband on grounds of desertion. In its opinion the Court said:
“The plaintiff, husband, left the wife in Rhode Island on August 3, 1947, and the above referred to letters were received by her in August and November, 1947.
“The plaintiff, husband, said he had asked his wife to come back to him and kept an apartment for her to come back to, but nowhere can we find any evidence other than his own that he made any effort to get her back; but the letters would indicate that he was through with his wife.
“It would seem that the plaintiff, husband, by his conduct, was the one *462 who' desired to bring the marital relations to a close, and did bring them to an end. See Stevenson v. Stevenson, 84 Fla. 687, 94 So. 860.”
Since this case must be reversed and remanded to the lower court for entering a decree setting aside the divorce granted to the appellant, we do not deem it necessary to pass on the questions brought up by the appellant since the awards to the wife by the lower court were based on the theory of alimony and property settlement, which are matters that will have to be determined by the lower court on the remand of this case for further consideration not inconsistent with this opinion. However, we affirm the award of attorney’s fees to the appellee’s attorney and also allow him a $200 fee for services before this court.
Reversed.
SHANNON, J., and MOODY, JAMES S., Associate Judge, concur.