## William C. Ward vs. Mary E. Ward.

*Divorce—Marriage—Desertion; Voluntary, Involuntary—Extreme*
*Cruelty—Justification—Duty of Husband—Reconciliation*
*—Duty of Wife—Evidence.*

1. Wilful desertion, in the statutory intent and meaning, is the voluntary separation of one of the married persons from the other, or the voluntary refusal to renew a suspended marital relation, without justification either in the consent or wrongful conduct of the other. The *onus* is on the plaintiff satisfactorily to prove all the constituent elements of the alleged wilful desertion. If he fails to do this, and especially if the evidence discloses that the wife's separation was either by his compulsion or with his consent, the divorce cannot be granted.

2. The wife's separation by the husband's compulsion may be caused either by actual physical force against her, or by threats and conduct on his part sufficient to afford her reasonable ground for believing or fearing that the security of her life or person is seriously endangered, unless she seeks safety by leaving him. The husband's consent to his wife's departure and continued separation from him may be either express or implied, and may be proven either by his direct declarations or admissions, or by such conduct and other circumstances as plainly and reasonably import such consent.

3. Under the proven and admitted facts in the case, *held*, that at the time of the wife's departure she had reasonable ground for believing or fearing that the security of her person was seriously endangered, unless she sought safety in immediate flight from her husband's house and presence. The threats of bloodshed, the presence of his revolver, the bolting of the doors, and the recent violent personal encounter only two nights previously might well excite alarm and fear of serious bodily injury, or worse, in the breast of a woman.

4. The controlling question is not whether the husband's language and conduct at the time of the separation were mere *rhodomontade*, without actual intent or purpose in his mind to kill or beat her, but whether these and all the other circumstances reasonably warranted her in believing or fearing that he would then and there injuriously assault her, unless she immediately departed.

5. If the wife's separation from her husband was by his compulsion, then it was not a wilful desertion in legal contemplation; and hence its continuance has been with his consent, as must be presumed until the contrary is satisfactorily proven by evidence showing that she voluntarily, and without justification, has since refused or failed to renew her marital relations with him.

6. Under the circumstances proved in the case, *held*, that it was the duty of the husband to have sought for his wife the next day after the separation, or at the earliest reasonable opportunity in order to explain his

mistake and threatening language and conduct and assure her of her future safety and care in his society and home.

(*May* 3, 1909.)

Judges GRUBB and PENNEWILL sitting.

*J. Harvey Whiteman* and *Thomas F. Bayard* for plaintiff.

*Daniel O. Hastings* for defendant.

Superior Court, New Castle County, May Term, 1909.

DIVORCE.

GRUBB, J., delivering the opinion of the Court:

In this case the petitioner, William C. Ward, prays for a divorce *a vinculo* from his wife, Mary E. Ward, on the sole ground of willful desertion for two years. Wilful desertion, in the statutory intent and meaning, is the voluntary separation of one of the married parties from the other, or the voluntary refusal to renew a suspended marital relation, without justification either in the consent or wrongful conduct of the other. The *onus* is on the plaintiff satisfactorily to prove all the constituent elements of the alleged wilful desertion. If he fails to do this, and especially if the evidence discloses that his wife's separation from him was either by his compulsion, and therefore not voluntary, or with his consent, then the divorce cannot be granted.

The wife's separation by the husband's compulsion may be caused either by actual physical force against her, or by threats and conduct on his part sufficient to afford her reasonable ground for believing or fearing that the security of her life or person is seriously endangered, unless she seeks safety by leaving him. The husband's consent to his wife's departure and continued separation from him may be either express or implied, and may be proven either by his direct declaration or admission thereof,

or by such conduct and other circumstances as plainly and reasonably import such consent. 9 *Am. & Eng. Ency. Law*, *p.* 778, note 1, citations.

The testimony in this suit is very contradictory, and not so satisfactory as could be wished; but amid the conflict of evidence certain controlling facts are sufficiently established to enable this Court to reach what it deems a just and proper conclusion. The petitioner's own testimony clearly indicates that for some time prior to his wife's leaving him, on September 26, 1906, the harmony of their marital relations had been disagreeably disturbed, and that his attitude toward her (whatsoever the cause and whosesoever the fault) was one of accusation, altercation, and dislike. The testimony on both sides shows, beyond doubt, that on September 24, 1906—two days before her departure—there had been an angry physical encounter between them. The testimony on his side asserts that on that day she attacked him with a butcher knife, and on her side that he choked her and left the imprint of his finger nails about her throat. She denies the using of the knife, and he the choking her, but each admits the physical encounter. On September 18, 1906—but two days after she left his house— a warrant was issued for his arrest upon her sworn complaint, charging him with an assault and battery upon her on said September 24th, with intent to kill her.

Whilst the testimony regarding the subsequent occurrence, on the night of September 16, 1906, which occasioned her sudden departure in the midst of it, varies in some of the details as presented on each side of this case, yet the following facts are satisfactorily proven, and, indeed, substantially disclosed in the petitioner's own testimony: That night, as he states, he was about to leave his home with certain school tax money in his hands as collector. This money, and also his revolver, he had placed beside or under some washed clothing on a table in his sitting room, whilst he went into his outside kitchen for his coat. On his return he found the money had dissappeared. He suspected that his wife had taken it, as she made no answer when he asked her if she had seen the money. Thereupon he declared in her

presence that there would be bloodshed there that night if he did not get that money, and he at once bolted the doors on the inside. He and his boys then made a search of the house for the money and discovered it in an adjoining room. Whilst they were making the search his wife had secretly left his home on foot, with her infant child in her arms, and she has never resumed, nor made any effort to offer to resume, marital relations with him.

In view of the proven and admitted facts before us, we consider that, at the time of her departure on the night of September 26th, the petitioner's wife had reasonable ground for believing or fearing that the security of her person, at the least, was seriously endangered, unless she sought safety in immediate flight from his house and presence. The threats of bloodshed, the presence of his revolver, the bolting of the doors, and the recent violent personal encounter only two nights previously, might well excite alarm and fear of serious bodily injury, or worse, in the breast of a woman.

The controlling question here is not whether his language and conduct, on the night when she left him and his house, was really only mere *rhodomontade*, without actual intent or purpose in his mind to kill or beat her, but whether these and all the other circumstances reasonably warranted her in believing or fearing that he would then and there injuriously assault her, unless she immediately departed. Accordingly we must hold that her departure on that night was by his compulsion, and not a voluntary separation on her part. In this connection it should be observed that, even if his wife had, as he suspected, actually taken possession of the money, yet he would have had no lawful right, on that account, to gratify his resentment by any violence likely to imperil her in life or limb.

It remains to be considered whether her continued separation has been with his consent, express or implied, at least up to a date within the two years next before September 29, 1908, the time of the commencement of this suit for divorce; that is, up to about September 29, 1906, only two or three days after her flight from his house. If her separation from him, on September 26, 1906,

was, as we hold, by his compulsion, then it was not at that date a wilful desertion in legal contemplation, and hence its continuance since then has been with his consent, as must be presumed until the contrary is satisfactorily proven by evidence showing that she voluntarily and without justification has since refused or failed to renew her marital relations with him; for the burden is on the petitioner to show that the continuance of her separation has been against his will and without his consent or acquiescence.

Having wrongfully compelled her departure, he must be considered in legal contemplation as having consented to it, and his consent must be presumed to continue until the contrary is proven. There is no evidence before this Court which satisfactorily shows that his wife had voluntarily and without justification refused or failed to renew her marital relations with him at any time from the night of her compulsory departure up to so early a date thereafter as September 29, 1906, on or before which day her alleged two years' wilful desertion must have begun for the purposes of the petitioner in this suit.

The petitioner's own testimony discloses that since her compulsory separation from him, on September 26, 1906, he has not made any effort to learn from her the cause of her leaving him, nor asked her to return to him, nor offered to take her back to his home, although he admits that he discovered, on finding the missing money that night, that he was mistaken in then suspecting his wife of taking it. Under the circumstances proved in this case, it was his duty to have sought for his wife the next day, or at the earliest reasonable opportunity, in order to explain his mistake and threatening language and conduct, and assure her of her future safety and care in his society and home, and to invite her to resume her place there as his wife, and thus endeavor to effect a reconciliation and reunion. Not having done so, he must be deemed to have consented to her continued separation, *Herold v. Herold*, 47 *N. J. Eq.* 210, 20 *Atl.* 375, 9 *L. R. A.* 696; 14 *Cyc. p.* 617, and citations.

The obligations of the marriage vow, the best interests of the parties and their off-spring, the wholesome maintenance of the

married state, and the public welfare require such a course, and make it a legal duty, where the petitioner—whether husband or wife—by wrongful conduct has caused the marital separation. *Dwyer vs. Dwyer*, 16 *Mo. App.* 426; *Stewart vs. Stewart*, 32 *Tenn.* 594; *Cornish vs. Cornish*, 23 *N. J. Eq.* 208; *Rittenhouse vs. Rittenhouse*, 29 *N. J. Eq.* 276; *Lyster vs. Lyster*, 111 *Mass.* 327. The performance of this duty was, therefore, a prerequisite to this action for the divorce which the petitioner now seeks; but he has not discharged it.

After a careful examination and consideration of the evidence, we find that the petitioner has failed to prove that his wife had wilfully deserted him for the period of two years prior to the commencement of this proceeding, and therefore his prayer for a divorce *a vinculo* is refused, and his petition is dismissed, with costs.

Judgment for defendant.