59 So.2d 40 (1952)
GORDON
v.
GORDON.
Supreme Court of Florida, Division A.
May 2, 1952.
Rehearing Denied May 21, 1952.
*41 Blackwell, Walker & Gray, Miami, for appellant.
Robineau, Budd, Levenson & Van Devere, Miami, for appellee.
HOBSON, Justice.
This is the second appearance of the instant suit in this Court. The citation of our opinion on the prior appeal is 160 Fla. 838, 36 So.2d 774, 4 A.L.R.2d 102. On the former appeal we reversed the decree of divorce which was entered in favor of Miriam Gordon, appellee in this as well as in the earlier appeal. Our judgment was predicated upon the fact that the said Miriam Gordon had on January 18, 1946, instituted an action for divorce in the Court of Common Pleas in and for Cambria County, Pennsylvania, which culminated in a final decree adverse to her. The ground which she asserted in the Pennsylvania court was that of "indignities to the person." While that case was pending Miriam Gordon came to Florida and without dismissing the Pennsylvania action, although she attempted unsuccessfully to do so, instituted this suit for divorce in the Circuit Court in and for Dade County alleging the grounds, cruelty and desertion. Her husband, Morris Gordon, through counsel, first filed a motion to dismiss the bill asserting in his motion the pendency of the Pennsylvania action. Thereafter he filed an answer in which he specifically pleaded the final decree rendered by the Pennsylvania court and alleged and proved that after a hearing, notice of which had been duly given to Miriam Gordon, the Pennsylvania court entered a final decree on the merits approving the *42 Master's recommendation that Miriam Gordon's prayer for a divorce be refused and dismissing her Pennsylvania action.
The lower court failed to give full faith and credit to the decree of the Pennsylvania court and on appeal we reversed the Chancellor's ruling, and, of course, the final decree of divorce which he had entered in favor of Miriam Gordon was necessarily set aside and held for naught. We pause at this juncture to dispose of the contention made by appellant that said final decree should now be held to operate as res adjudicata on the question of desertion which was reasserted by an amendment after our judgment of reversal. Counsel's position is bottomed upon the fact that the special master originally appointed in this suit recommended a final decree of divorce in favor of Miriam Gordon and that such final decree be granted upon the ground of extreme cruelty. Counsel patently mean by this it should be inferred that in the final decree which approved and adopted the special master's recommendations but which was reversed by this Court, a divorce upon the ground of desertion was expressly denied appellee. Such inference [we indulged it originally] was proper so long as that final decree remained in full force and effect. However, the contention that res adjudicata could be predicated upon said final decree after its reversal is untenable, particularly in view of the fact that the pleadings have been revamped and additional testimony taken. This is the same suit  not a suit which was instituted subsequent to prior litigation in which a valid final decree was entered which continued, as such, to subsist. The original decree which was reversed has never had any validity or efficacy whatsoever since our judgment of reversal. It is apodictic that without a valid subsisting decision in an earlier stage of the same suit or a final decree or judgment entered in a former action there is no foundation for invocation of the doctrine of res adjudicata or the principle of estoppel by judgment. The only decision or final decree now extant so far as this suit is concerned is that with which we are now dealing. The situation in this regard at present is not different from that which would have existed if the Chancellor, after entering the first final decree, upon a petition for rehearing had granted same and subsequently, upon a re-reference and the taking of additional testimony, had changed his ruling upon the subject of whether Morris Gordon had been guilty of desertion.
It was our opinion and judgment upon the first appearance of the instant suit in this Court that the Pennsylvania Court's final decree should have been given full faith and credit because we determined that both suits were predicated upon the same cause of action after concluding that the testimony which was presented by the appellee in her Florida suit was "essentially the same as that which she would have been required to present to establish her charge of `indignities to the person', had she pursued her action in Pennsylvania where she was given ample notice and opportunity to be heard."
Upon remand to the Circuit Court appellee amended her bill of complaint. In and by her amendment she reiterated her charge of extreme cruelty and elaborated thereon. She also reasserted that the appellant had been guilty of desertion which she contends was constructive in character.
The final decree from which this appeal is prosecuted granted unto Miriam Gordon a decree of divorce a vinculo matrimonii. In and by said decree it was determined Miriam Gordon had established that her husband was guilty of desertion and of extreme cruelty which was expressly declared to have been of a physical nature.
It was the Chancellor's view that full faith and credit need not now be given to the final decree of the Pennsylvania court. It was his opinion that the evidence which was produced by the appellee established extreme cruelty of a physical nature and that her action in Pennsylvania was not based upon a ground which contemplated physical cruelty. He further reached the conclusion that appellee's suit in this State was not foreclosed by the final decree of the Pennsylvania court because appellee did not in that court assert desertion as a ground for divorce. Moreover the Chancellor followed the suggestion of counsel to the effect that she could not have charged desertion at the *43 time she filed her action in Pennsylvania under the law of that State because the Pennsylvania statute requires desertion for a period of two years and such period had not then run.
We will first deal with the question whether the Pennsylvania decree should have been given full faith and credit and whether it operates as a bar to the entry of the final decree now under review.
Apparently some lawyers and text book authors believe there is confusion in the law of this jurisdiction upon the question, under what circumstances does the doctrine of res adjudicata or the principle of estoppel by judgment become operative. In all probability the confusion which apparently exists stems from a failure clearly to comprehend the difference between the doctrine of res adjudicata and estoppel by judgment and to understand the test proper to be applied in determining which, or whether either, may be appropriately invoked. Estoppel by judgment has its counterparts or at least its quasi counterparts, in "estoppel by verdict" and "conclusiveness of verdict." Either res adjudicata or estoppel by judgment furnishes the primary test in determining the applicability of the full faith and credit clause of the Federal Constitution, art. 4, § 1. This Court has at least indicated that full faith and credit need not be given to a final decree of a sister state when estoppel by judgment is the appropriate test unless the "precise facts" offered by the plaintiff in the Florida action were heard and determined in the former suit which was adjudicated in the foreign jurisdiction. See Bagwell v. Bagwell, 153 Fla. 471, 14 So.2d 841.
The adjudications in other jurisdictions which we have considered in connection with this case lead us to the conclusion that there is an absence of uniformity with respect to the test which should be employed to determine whether a final decree or judgment of a foreign jurisdiction should be accorded full faith and credit in a subsequent action between the same parties. Some courts hold, so we believe, as we held in Gordon v. Gordon, supra, that is to say that the determining factor in deciding whether the cause of action asserted in the first suit was the same as that relied upon in the second suit, is whether the evidence necessary to sustain the latter action was essentially the same as that which was given or would have been required had the complaining party testified in the prior suit. Buder v. Fiske, 8 Cir., 174 F.2d 260; Griggs v. Griggs, 214 S.C. 177, 51 S.E.2d 622; Whelan v. Connolly, 192 Misc. 382, 80 N.Y.S.2d 691; Band v. Reinke, 230 Iowa 515, 298 N.W. 865; Jackson v. Pepper Gasoline Co., 284 Ky. 175, 144 S.W.2d 212. See also 4 A.L.R.2d 107 et seq. Other courts are of the opinion that full faith and credit should be given and that a final decree of a court of competent jurisdiction of a sister state should operate as a bar to a subsequent action as to all matters which were or might have been litigated originally. Ashton v. Ashton, 192 Ark. 774, 94 S.W.2d 1033; Bowen v. Bowen, 219 Iowa 550, 258 N.W. 882; Ball v. Ball, 189 Ark. 975, 76 S.W.2d 71; 27 C.J.S., Divorce, § 326, page 1271; 4 A.L.R.2d 114.
We have held as a general proposition that when a final decree or judgment of a court of competent jurisdiction becomes absolute it puts at rest and entombs in eternal quiescence every justiciable, as well as every actually adjudicated, issue. This pronouncement is considered by us as controlling only when res adjudicata is the proper test. By this we mean it is not controlling except in an instance wherein the second suit is between the same parties and is predicated upon the same cause of action as was the first. If the second suit is bottomed upon a different cause of action than that alleged in the prior case estoppel by judgment comes into play and only those matters actually litigated and determined in the initial action are foreclosed  not other matters which "might have been, but were not, litigated or decided." Prall v. Prall, 58 Fla. 496, 50 So. 867, 870, 26 L.R.A.,N.S., 577; Bagwell v. Bagwell, supra. The test proper to be applied in a divorce action in order to decide whether the second suit is founded upon a new and separate cause of action is not simply whether a different statutory ground for divorce is asserted but whether the facts necessary to the maintenance of such suit are essentially the *44 same as those which were relied upon to establish plaintiff's alleged right to a decree in the first action and whether the decree or judgment sought in each requires the same degree of proof to justify or sustain it. If the degree of proof required in the first suit is greater than that required in the second the cause of action cannot be held to be the same and estoppel by judgment is the proper test to be applied.
A great many courts and text book writers treat "res adjudicata" and "estoppel by judgment" as synonymous. The most erudite legal minds appear to have difficulty in stating the difference which they consider exists between them. We find no occasion to discuss the slight difference which some authors limn between the terms "estoppel by judgment", "estoppel by verdict" or "conclusiveness of verdict." These expressions are ofttimes used interchangeably. Although dissertations have come to our attention in which the doctrine of res adjudicata is considered as a sub-division or branch of the law of estoppel, strictly and technically speaking, such treatment is not proper. The former is founded upon the sound proposition that there should be an end to litigation and that in the interest of the State every justiciable controversy should be settled in one action in order that the courts and the parties will not be pothered for the same cause by interminable litigation. On the other hand, estoppel rests upon equitable principles. 50 C.J.S., Judgments, § 593. Even so, the ultimate purpose of estoppel by judgment is to bring litigation to an end. The difference which we consider exists between res adjudicata and estoppel by judgment is that under res adjudicata a final decree or judgment bars a subsequent suit between the same parties based upon the same cause of action and is conclusive as to all matters germane thereto that were or could have been raised, while the principle of estoppel by judgment is applicable where the two causes of action are different, in which case the judgment in the first suit only estops the parties from litigating in the second suit issues  that is to say points and questions  common to both causes of action and which were actually adjudicated in the prior litigation.
In our opinion in the Bagwell case [153 Fla. 471, 14 So.2d 843,] we properly applied the principle of estoppel by judgment and we said "It is the essence of estoppel by judgment that it be made certain that the precise facts were determined by the former judgment." (Italics supplied.) By the expression "precise facts" we intended the same connotation as though we had used the words "all points and questions." In connection with res adjudicata we stated in Bagwell v. Bagwell, supra, "The test of the identity of the causes of action, for the purpose of determining the question of res adjudicata, is the identity of the facts essential to the maintenance of the actions." (Italics supplied.)
In Gordon v. Gordon, supra [160 Fla. 838, 36 So.2d 776], we quoted with approval the foregoing quotation with reference to the test which should be applied in connection with res adjudicata. In the Gordon case we interpreted the language "the identity of the facts essential to the maintenance of the actions" to mean that if the testimony produced in the second case is essentially the same as that which was, or would have been required to be, presented in the first action, the decree entered in the former suit should be accorded full faith and credit because in such case it is usually proper to conclude that both suits were founded upon the same cause of action. In the first appearance here of this case there was no question that the degree of proof which would have been required in the Pennsylvania action was essentially the same as that required to sustain the cause of action upon which the first final decree entered in this jurisdiction was based. Upon a careful review of our decisions and a reconsideration of our opinion in Gordon v. Gordon, supra, we have decided that the phrase "identity of the facts essential to the maintenance of the actions" is more properly construed to mean that the testimony produced by the plaintiff in the second suit must be essentially the same as that which was produced in the former action rather than to mean that the testimony in the second cause must disclose the "precise facts" which were testified to in the first. It is true that the word "identity" ordinarily *45 connotes exactness. However, when the expression "Identity of facts essential to the maintenance of the actions" is considered in connection with the underlying reason for the establishment of the doctrine of res adjudicata which also inheres in estoppel by judgment we are led to the view that the testimony, that is to say the facts which are presented by the plaintiff and his or her witnesses in the second suit, should not necessarily be the "precise facts" in the sense of being word for word like those presented in the first action, but that in essence such testimony should be the same. Consequently, we adhere to our pronouncement in Gordon v. Gordon, supra. We do not consider that the words "precise facts", used by us in the Bagwell case, should be construed to mean that the testimony must be word for word alike in both cases even upon a consideration of estoppel by judgment. The test with reference to res adjudicata or estoppel by judgment is, and should be, whether the evidence in both cases is in essence the same albeit under estoppel by judgment it must be determined that "every point and question" presented in the second action was actually litigated and decided in the first. We hold the view that the expression "precise facts" has been, and should be, given the same signification as the words "every point and question."
We have carefully considered the testimony which is now before us and have concluded that at most it establishes cruelty which if sufficient as a predicate for a decree of divorce, is mental as distinguished from physical in character. The parties to this suit had a child by the name of Allen Richard Gordon who was born on July 24, 1942, and departed this life on September 24, 1944. It appears that appellee had taken her child out to play with their next door neighbor's children. The appellee ran into the house to attend to an urgent household duty and remained therein for approximately five minutes. When she returned the child was gone. It was subsequently discovered that the infant son had drowned in a fish pond located a short distance from the home of his parents. At the time of the child's death appellant was in the service and was stationed at Pearl Harbor. Upon being notified of the tragic accidental death of his son, he secured permission to come home and arrived in Johnstown, Pennsylvania, about six days after the child's burial.
Appellee testified that upon appellant's arrival in Johnstown he utterly failed to appreciate her distraught mental condition and emotional upset and, instead of showing any tenderness or consideration for her, began immediately to talk about the hard trip which he had undergone in order to get home and to find fault with her and accuse her of not properly looking after the child, saying that she was careless and through her negligence she "had drowned the child while he [appellant] was out in the service." Appellee insists that appellant continued such accusations up to the time she was forced to cease living with him and that due to this course of conduct on the part of appellant and his inconsiderate sexual demands and activities hereinafter more specifically delineated, as well as his constant, obvious interest in her comparatively good financial status rather than in her as his beloved wife, she became sick of body and mind and ultimately became nervously and emotionally prostrated. If such result did ensue from appellant's course of conduct it is of little or no consequence that there may have been an element of truth in some of his accusations. He certainly knew, or should have known, the effect which his continuous accusations had upon his wife and, having such knowledge, he should have desisted therefrom if he, in good faith, contemplated any semblance of a happy and successful continuance of the marital relationship. Appellant denied the appellee's testimony but the special master and the Chancellor determined the controversy on this point in favor of the appellee and against the appellant. We see no occasion to disturb such finding of fact because there is in this record competent substantial evidence which sustains the ruling made by the special master and confirmed by the Chancellor.
Appellee contends that appellant was physically cruel to her in connection with their sex life. However, the pain attendant *46 upon the sex act to which appellee testified was not extreme cruelty which was physical in character. Although appellee testified that appellant's conduct in connection with the sex act was brutal, she refused him, if at all, only on one or two occasions. Her testimony as to brutality was merely her conclusion and her testimony concerning the facts shows that the pain was not caused by physical "brutality" but was due to her mental reaction to appellant insisting upon "having a sexual relationship without any tenderness or any affection at all." Appellee defined what she meant by the expression "brutal manner" when she stated that it consisted of "just getting on top of me and satisfying himself." Appellant expressly denied his wife's accusations of sexual brutality but, taking the appellee's testimony at face value, we are unable to catalogue appellant's conduct as extreme cruelty of a physical nature.
It may be that appellee's evidence made a prima facie case for a final decree of divorce upon the ground of extreme cruelty but the character of such cruelty must be classified as mental. However, it is improper for us to decide whether such evidence could be said to establish extreme cruelty of a mental character sufficient to justify a final decree of divorce because we are compelled again to hold that full faith and credit should have been given to the final decree of the Pennsylvania court, insofar as the cause of action in the instant suit was founded upon extreme cruelty, and that court decided said question adverse to appellee. The relief sought by appellee upon the ground of extreme cruelty should have been denied because the allegations of the amended bill and the proof in support thereof failed to establish extreme cruelty of a physical nature, and extreme cruelty of a mental character was foreclosed by the final decree in the Pennsylvania suit.
We now give our attention to the matter of the amended bill which alleged the statutory ground of desertion. Section 65.04(7), F.S.A. reads: "Willful, obstinate and continued desertion of complainant by defendant for one year." Appellee does not contend that appellant left her but that his course of conduct caused her life with him to be so burdensome as to require her, in the interest of her health and peace of mind, to leave him. This Court has recognized what is commonly called "constructive desertion." The spouse who drives the other away is the deserter. We have held that a wife may drive her husband away. The party to the marriage contract who by his or her conduct makes it necessary for the other party to such contract to leave the marital home is the one who is guilty of desertion. Stevenson v. Stevenson, 84 Fla. 678, 94 So. 860; Hudson v. Hudson, 59 Fla. 529, 51 So. 857, 29 L.R.A.,N.S., 614, 138 Am.St.Rep. 141, 21 Ann.Cas. 278. The degree of severity of alleged misconduct or cruelty sufficient to justify a spouse in temporarily leaving the other need not be as strong in character as is necessary to justify the entry of a final decree of divorce. Hudson v. Hudson, supra; Ward v. Ward, 7 Pennewill 364, 23 Del. 364, 75 A. 611; Shine v. Shine, Mo. App., 189 S.W. 403; McVickar v. McVickar, 46 N.J. Eq. 490, 19 A. 249, 19 Am.St.Rep. 422; 27 C.J.S., Divorce, § 38(b), page 575; 17 Am.Jur., Divorce and Separation, § 101, page 202; 21 Ann.Cas. 282.
Not only did we quote the foregoing principle, obviously with approval, in Hudson v. Hudson, supra, but it is patently founded in logic and common sense. A spouse should not be required to remain in an unhappy milieu caused by misconduct or cruelty on the part of the other party to the marriage contract until a breakdown in physical or mental health is imminent in order to be justified in temporarily leaving the common abode. Of course, the misconduct or cruelty must reach the point of endangering the health or the life of the nonoffending spouse or of making continued cohabitation an intolerable burden to justify leaving the other permanently and securing a divorce. However, if a wife should be justified in temporarily leaving her husband and thereafter he should fail in good faith to carry out his duty of attempting a reconciliation he might thereby become guilty of constructive desertion. It is entirely appropriate in a situation such as is presented by the record herein that a *47 wife leave her husband temporarily and thus shock him into an understanding frame of mind and cause him to realize the seriousness of the storm which is threatening the matrimonial bark. Under such circumstances a husband should be required to attempt a good faith reconciliation and promise to refrain in the future from the course of conduct which the wife repeatedly, but without avail, told him she found to be so offensive to her maternal heart and sensitive emotional nature.
The foregoing pronouncements bring us to the real crux of this case. The instant suit is a typical example of one which gives rise to the extension or modification of the rule, that the determining factor in deciding whether the cause of action asserted in the first suit was the same as that relied upon in the second action is whether the evidence necessary to sustain the latter suit is essentially the same as that which was produced in the former. The extension or modification of the rule to which we refer is the one previously noted with reference to the difference in the degree of proof required in the one instance as compared to that called for in the other. The issue, point and question in Miriam Gordon's Pennsylvania action against her husband was whether she was entitled to a final decree of divorce upon the ground of "indignities to the person" which we in Gordon v. Gordon, supra, likened unto extreme cruelty of a mental nature. The issues  the points and questions  in the instant suit are: (1) Was Miriam Gordon justified in temporarily separating from her husband; (2) If she was justified in such action, did Morris Gordon perform the duty cast upon him by the law of attempting a reconciliation in good faith; (3) Was he excused from performing such duty because under the facts and circumstances of the case an attempt at reconciliation would manifestly have been unavailing.
It is clear that none of the issues presented in and by the present suit, insofar as it is predicated upon "constructive" desertion is concerned, was adjudicated in the Pennsylvania action. Moreover, no one of the issues in this suit was a justiciable issue, that is to say one proper to have been adjudicated, in the Pennsylvania litigation. As previously stated, at the time of the institution of the Pennsylvania suit Miriam Gordon could not have charged her husband with desertion because the Pennsylvania code or statute requires that desertion as a predicate for divorce must have existed for a period of two years or more. 23 P.S.Pa. § 10. It is true that the facts relied upon by Miriam Gordon in her Pennsylvania suit in which she sought an absolute divorce on the ground of "indignities to the person" would have been essentially the same, had she appeared and testified, as the facts which she presented in this Florida action. However, the degree of proof necessary to entitle her to the relief which she sought in the former action  a final decree of divorce upon the ground of "indignities to the person"  was greater than the degree of proof required to establish that she was justified in temporarily separating from her husband. Consequently, it would be illogical to say that the issues  the points and questions  which were heard and determined in Miriam Gordon's Pennsylvania suit were the same as those existing in the current Florida action or that the cause of action in both suits was identical. This being so, neither estoppel by judgment nor res adjudicata forms a basis for invocation of the full faith and credit clause of the Federal Constitution.
So we now proceed to consider, and to determine, whether we should affirm or reverse upon the merits the final decree of divorce entered herein by the learned Chancellor.
We must agree with the Chancellor that Miriam Gordon was justified in temporarily leaving her husband because there is competent, substantial evidence in this record to sustain such conclusion. The question which gives us genuine concern is whether the alleged constructive desertion was obstinate. From time immemorial the male has been recognized as the natural aggressor in the matter of courting the woman whom he desires to become his wife. There seems to be no logical reason why he should not continue such role thereafter, particularly subsequent to discord, misunderstandings and separation. Indeed, it is well established that the husband should take the initial step towards reconciliation *48 and some courts have gone so far as to hold this to be true even if a wife deserts him without cause. In Hudson v. Hudson, supra, we recognized the latter rule as being one which obtains generally.
Since we have concluded that appellee was justified, because of the conduct of her husband toward her, in temporarily separating from him there is no question but that appellant should have attempted a reconciliation and such attempt should have been made in good faith. Appellant wrote a letter to appellee during the time they were having marital difficulties, and before the final separation, in which he professed his love for her, partially admitted his own derelictions and stated that he was a "changed man", that he would do anything appellee wanted him to do, would be a gentleman after the war and "dress like a million dollars." His general acknowledgment of mistakes, which he said he would not repeat, failed to pin-point as one of such mistakes the conduct concerning which appellee complained. He has never, according to this record, evidenced a truly repentent attitude, nor has he actually sought his wife's forgiveness and expressed an earnest purpose to refrain in the future from his accusations concerning her asseverated carelessness in connection with the tragic death of their son which caused their common heartache. Indeed, upon their final conference, about January 2, 1945, when appellee told appellant why she found it necessary to leave him and why she felt she could not return to him, he remained silent insofar as any attempt at reconciliation was concerned and immediately began to make demands with reference to a settlement of their property rights. He has taken the position in this litigation that there was nothing he had done for which he should seek forgiveness, nor was there anything he had done that he should promise to refrain from doing in the future. The clear refutation of this asserted excuse lies in the fact that the special master who observed the witnesses believed appellee on this point. Moreover, in this suit both parties personally appeared and gave testimony. Appellant's partial or limited confession in his letter that he had been at least to some degree derelict and inconsiderate, which was but an admission without contrition, was given due consideration by the special master and the Chancellor and its significance has not escaped us.
Appellant admits that he has never since the final separation made any attempt at reconciliation although he testified that he had attempted to call his wife and to see her. If appellant in good faith had desired a reconciliation he could at least have written in a manly, penitent and forthright way to his wife and sought her forgiveness and a reconciliation. This he admittedly did not do. We cannot agree that such an attempt on his part would manifestly have been unavailing for he never did fairly and frankly admit, or with any display of penitence seek forgiveness for, his misconduct toward his wife. Certainly this is true with regard to the misconduct toward which Miriam Gordon's constant complaint was directed. Appellant never expressed a bona fide regret for, or promised that in the future he would refrain from, the course of conduct which he must have known was more than human frailty could stand constantly and indefinitely. Under these circumstances we are compelled to agree with the Chancellor's conclusion that no good faith attempt at reconciliation was ever made by appellant.
We conclude that the Pennsylvania decree should not be held to operate as res adjudicata upon the final decree now under review for the cause of action was different in that suit, nor should it be held to work an estoppel by judgment as to the appellee's cause of action herein, to wit: (constructive) desertion because the issues  points and questions actually litigated and determined  were not the same in both actions. Therefore, such decree is not a bar to this suit for it is not entitled to full faith and credit. It is further our conclusion that the final decree of divorce granted upon the ground of desertion should be and it is hereby affirmed.
Affirmed.
SEBRING, C.J., and TERRELL and THOMAS, JJ., concur.