ROBERTS, Justice.
H. Spencer Bond first married one Katherine Hoover at Glenside, Pa., June 23, 1910, and that marriage is still in full force and effect. Notwithstanding this, he married Alma Whetstone in Volusia County in June 1936. Soon after the marriage and on February 27, 1937, A. A. Whetstone, otherwise not identified, conveyed to Alma Whetstone Bond the property involved in this suit. Alma, obviously believing herself to be the lawful wife of Bond, on August 29, 1939, conveyed the property to Margaret Fee (who later by marriage became Margaret Duggan) and caused Mar *271 garet Fee on the same day to reconvey it to H. Spencer Bond and Alma Whetstone Bond, his wife, which conveyance on its face created an estate by the entireties in H. Spencer Bond and Alma Whetstone Bond. On January 19, 1945, Alma died, and because of what appeared to be an estate by the entirety Bond took over the prop-’ erty as owner. Later in 1945 Bond married Louette Nottingham in Thomasville, Georgia, and they returned to St. Lucie County where they lived until that marriage was terminated by divorce on November 9, 1950. During the purported marital status between Bond and Louette, he with her acquiescence conveyed the property to one Brown who on the following day recon-veyed it to “H. Spencer Bond and Louette Nottingham Bond, his wife.” This deed on its face appeared to create an estate by the entireties in S. Spencer Bond and Lou-ette Nottingham Bond to the property here involved.
The deeds were substantially in the statutory form recognized in this state, and under Section 689.03, Florida Statutes, F.S.A., are deemed to contain the basic common law covenants. -In the divorce suit instituted by Louette, the defendant Bond sought to have cancelled her interest in the property. In the final decree of divorce, the court adjudicated and held valid the conveyance of Bond and wife to Brown and Brown to Bond and wife. By. virtue of this decree, which also dissolved the bonds of marriage, Bond and Louette became tenants in common and joint owners of such property, if any, as passed under the deed. The decree was not appealed from and passed into verity in that form.
On November 13, 1950, Patricia P. Deni-son and Alma O’Loughlin, as daughters and sole heirs of Alma Whetstone Bond, filed their amended bill of complaint against H. Spencer Bond, Louette N. Bond, Margaret Duggan, and Charles R. P. Brown as defendants. Patricia Denison and Alma O’-Loughlin were daughters of Alma Whetstone but not daughters of H. Spencer Bond. In their bill they alleged that at the’ time Bond had married their mother in’ 1936, he was under coverture of marriage to Katherine Hoover Bond and that his purported marriage to their mother constituted a fraud on her; that the conveyance out of Alma Whetstone to Bond and herself, as husband and wife, also constituted a fraud on Alma. They sought to have the marriage declared void and to have the deed through which their mother, Alma Whetstone Bond, parted with title to the property to be held void and all subsequent deeds based thereon to be held void as a cloud on their title. Bond answered, contending that the marriage-was valid and that the deed from Whetstone through Fee to them jointly created a valid estate by the entire-ties, and as a survivor he was the owner of the land. In the alternative, he contended that if he were not the owner of the land he held a claim against it for improvements placed thereon over a ■ period of years. With all parties before the court and after multiple hearings and pleadings, the cause came on for trial. During the progress of the trial, the plaintiff daughters and Bond compromised their differences and entered into a stipulation, the ultimate effort of which was that he would cancel his claim against the property and that they would convey to him, upon obtaining the property, an undivided one-half interest in same to be held with them as a tenant in common. 1 This stipulation was later approved by the court and given effect in the final decree.
The trial court.heard extensive testimony and on February 3, 1952, filed its opinion and judgment, in which it held that the marriage to Katherine Hoover, contracted in 1910, was still undissolved and that the subsequent marriage by Bond under such coverture was fraudulent. He held the conveyances to be without consideration and cancelled the deed from Alma Whetstone Bond through Margaret Fee to H. Spencer Bond and herself. This basic source of title having failed by virtue of such holding, the court then proceeded to cancel-all of the subsequent deeds, including the conveyance of Bond and Louette, his wife, to Charles R. P. Brown, and the reconveyance from Charles R. P. Brown to Bond and Louette, as husband and wife, notwithstanding that such passage of title as between Bond and Louette had been previously adjudged to *272 be valid in the divorce suit. ■ He specifically approved the settlement stipulation between the plaintiff daughters and Spencer Bond and directed that the daughters, withjn 20 days, convey one-half interest in the property to Bond and upon their failure to do so, that the decree should operate as such a conveyance.
The effect of the decree was (1) to cancel, as bigamous, the marriage between Bond and Alma; (2) to cancel the passage of title out of Alma; (3) to vest title to an undivided one-half interest in the property in Bond; (4) to cancel the passage of title from Bond to Louette.
As to the holding of the trial court that the marriage between Bond and Alma was bigamous and that the passage of title from Alma Whetstone through Fee to herself and Bond was without consideration and, in effect, a product of the fraud, and his order cancelling ‘both the marriage and such passage of title, the evidence abundantly supported the decree; and as to that part, the decree is affirmed under the authority of Beidler v. Beidler, Fla., 43 So.2d 329.
That portion' of the decree which vitiates the passage of title from Bond through Brown to Bond and Louette, as husband and wife, presents an entirely different situation.. That question has been adjudicated adversely to Bond and favorably to Louette in the divorce suit, and since that decree was not appealed that question became “entombed in eternal quiescence” under the principle of estoppel by judgment. Gordon v. Gordon, Fla., 59 So.2d 40, 43.
It is obvious from the record that Charles R. P. Brown never acquired nor owned any interest in the property, but was only a conduit through which Spencer and Louette conveyed the property to themselves as an apparent estate by the entirety and which, upon decree of divorce, made them tenants in common of any property passing thereunder. We are, therefore, confronted with a situation where Bond on April 19, 1946, conveyed to Louette a bad ¡title to property and on February 13, 1952, by virtue of the decree in the instant suit, Bond acquired a good title to an undivided one-half interest in the property thus conveyed. What interest, then, did Lou-ette acquire under the deed of April 19, 1946, plus the final decree of February 13, 1952, affirming title in Bond to one-half of what he thought he owned when he made the conveyance to Louette? This situation poses the material question: When a person conveys land by warranty deed in which he has no interest at the time and afterwards acquires a title to one-half interest in the same land, will he be permitted to claim in opposition to his outstanding warranty deed?
This court answered that exact question in Tucker v. Cole, 148 Fla. 214, 3 So.2d 875, 877, quoting from 8 R.C.L. 1058, sec. 110, as follows:
“As a general rule, when a person conveys land in which he has no interest at the time, but afterwards acquires a title to the same land, he will not be permitted to claim in opposition to his deed, from the grantee, or any person claiming title from the grantee.”
Upon entry of the decree of divorce between Louette and Bond, they became tenants in common in equal shares of such property as actually passed under the deed from Bond to Brown to Bond and Louette. Under the principle of law above set forth, we hold that the one-half interest in the property affirmed by the trial court in Bond, is in law and equity the joint property of H. Spencer Bond and Louette Nottingham Bond.
Approaching the question from a different angle, we reach the same result. Bond had, by warranty deed, conveyed the property in such a manner that upon divorce Louette became the owner of an undivided one-half interest in such property as he conveyed. When his basic title was assaulted by the plaintiff daughters, he went into court as he should have done in an effort to defend his basic title, which would have benefitted- both Bond as to his. one-half interest and Louette as to her one-half interest. Let us ask ourselves, then, *273 what would have been the situation if Bond had prevailed against the daughters and his basic title had been held valid. It is inescapable that, upon title to the land having been confirmed in Bond, Louette, by virtue of her deed, would have immediately been recognized as the owner of one-half of his acquisition. Bond never knew whether or not he would have prevailed in that effort because he compromised it in the middle of the struggle and deemed it to his best interest to negotiate a truce. He sued to protect the whole, but through the negotiation . acquired only half of the prize. It would be indeed inequitable to say that he could compromise his fight to defend his basic title for one-half of the prize and not divide with his tenant in common.
And approaching the question from still another angle, we reach the same result. It was Bond who had set in motion the entire chain of circumstances which had developed the controversy. It was Bond, who had committed the fraud against Alma and Louette. Bond is attempting to assert his rights by answer and counterclaim in a court of equity. To allow him under these circumstances to perpetrate two fraudulent marriages on two innocent women and extricate himself from his frauds through the death of one and divorce of another and wind up with a 50 percent interest in the prize is not in keeping with the principles of equity, and he will not he allowed to so unjustly enrich himself at the expense of Louette.
For the reasons stated, the judgment below is affirmed in part and reversed in part, with directions to the trial court to confirm in Louette Nottingham Bond her portion of the one-half interest which Bond acquired under the final decree — in other words, to confirm a one-fourth interest in Bond and a one-fourth interest in Lou-ette Nottingham Bond. The decree in all other respects is affirmed.
Affirmed in part and' reversed in part.
TERRELL, Acting C. J., and SEBRING, J., and WHITE, Associate Justice, concur.