241 So.2d 861 (1970)
PENNSYLVANIA INSURANCE COMPANY, Appellant,
v.
MIAMI NATIONAL BANK, a United States Banking Corporation, Appellee.
No. 70-254.
District Court of Appeal of Florida, Third District.
December 8, 1970.
*862 Knight, Underwood, Peters, Hoeveler & Pickle and William J. Flynn, Miami, for appellant.
Richard L. Lapidus, Miami, for appellee.
Before CHARLES CARROLL, HENDRY and SWANN, JJ.
HENDRY, Judge.
Appellee-plaintiff bank sued appellant-defendant insurance company alleging an insured forgery loss under a banker's blanket bond. In a jury trial of the cause, the Civil Court of Record granted the bank's motion for directed verdict at the close of all the evidence; the court denied a similar motion by the insurance company and entered a final judgment for the bank accordingly. The appellant insurance company assigns error in the court's granting of the motion for directed verdict for the bank and the denying of the motion for directed verdict in its favor.
During the effective date of the insurance policy covering a forgery loss, the bank on October 7, 1964, loaned $5,500.00 to Howard L. Rundquist and Jo Ellen Rundquist as makers of a note endorsed by Robert W. Ball (as surety), and secured by Howard Rundquist's assignment, of October 7, 1964, of estate proceeds recorded in an out-of-state probate court. Later, he made other assignments. After the second assignment, he overdrew his account, and the note went into default. In a suit on *863 the note, judgment against the makers was uncollectible. In that suit Ball's endorsement was adjudged a forgery. The insurance company denied the bank's claim, asserting that the estate had paid the bank $5,500.00 (the amount of the note) so that the bank suffered no loss. The bank contends that the $5,500.00 from the estate was to cover the unsecured overdraft of Rundquist's account (of about $6,000.00) upon a pro rata distribution to his creditors from the estate, and was not to pay the note.
The questions on appeal are as follows: Whether the bank proved its prima facie case as to coverage and loss; whether the adjudication of the forged endorsement was res judicata or collateral estoppel binding upon the insurer as privy to the party insured; whether admitting or refusing to admit certain evidence was harmless or reversible error.
We are of the view that the trial court committed reversible error in granting a directed verdict in favor of the plaintiff at the close of all the evidence. See generally: Massey and Westen, "Civil Procedure," 18 U. of Mia.L.Rev. 745, 791. The bank received $5,500.00 from the estate proceedings and this was the exact amount of the note secured by the assignment. Was that $5,500.00 admittedly received applied to a subsequent overdraft or to the note? This was the key contested issue of whether or not the bank had incurred a loss due to a forgery. Testimony of the attorney employed by the bank to collect the note that the bank did apply the money from the estate in the exact amount of the note to an overdraft was not substantiated by documentary evidence. Moreover, the attorney admitted that the overdraft occurred after the execution of the note and assignment dated October 7, 1964.
At the least this presented a disputed issue of fact as reflected by the pleadings and the evidence which should have been passed upon by a jury. See: Massaline v. Rich, Fla.App. 1962, 137 So.2d 10. Additionally, the credibility of the witnesses (attorney, cashier, and insurance claims manager) was at issue, as well as the sufficiency of the evidence presented. See: McQueen v. Atlantic Truck Service, Inc., Fla.App. 1968, 215 So.2d 325.
Since we reverse, we shall not pass upon the other questions relating to the trial court's admission of certain evidence. However, because the issue of whether the endorsement was forged seemed vital to the parties, we will discuss the admissibility of the final judgment.
The present case is not appropriate for the application of the doctrine of res judicata, as neither the parties nor the cause of action are the same. The rule of collateral estoppel (or estoppel by judgment) requires that the matter sought to be interposed as a bar must have been litigated and determined by the judgment, or if not expressly adjudicated, essential to the rendition of the judgment. This rule is in force in Florida. See: Gordon v. Gordon, Fla. 1952, 59 So.2d 40, 44.
The language and explanation employed by Moore points out the nature of the problem, for example:
"* * * We have chosen, however, to limit our use of the term `res judicata', * * * to * * * the conclusive effect of a judgment on the cause of action on which it was rendered, as distinguished from collateral estoppel, which is the * * * judgment's conclusive effect in a suit on another cause of action."
1B Moore, Federal Practice, ¶ 0.441[2], pp. 3375-3376.
(Note also the classification adopted by the Restatement of Judgments: merger, bar, direct estoppel, and collateral estoppel; 1B Moore, Federal Practice, ¶ 0.441 [2] n. 6, p. 3376.)
As a general rule, the rights of a person who is not a party to a suit or in *864 privity with a party, are not affected by the judgment rendered therein, despite any lurking or actual interest in the subject matter litigated. As between that third person and one of the parties to a prior action, their rights are to be determined as though the judgment had never been rendered. This is true even though the two suits arose out of the same transaction, and involve the same issues and evidence. Martin v. Arrow Cabs, Inc., Fla.App. 1958, 107 So.2d 394; 50 C.J.S. Judgments § 820, pp. 376-378.
We express the view that the insurer was not in privity with insured herein, particularly where the insured brought the suit and consequently the insurer lacked the opportunity to control the prior proceeding (but we do not decide the adequacy of notice). Compare: Boughton v. Farmers Insurance Exchange, 354 P.2d 1085 (Okl. 1960), 79 A.L.R.2d 1245, 1252 (uninsured motorist coverage) and Allstate Insurance Co. v. Warren, Fla.App. 1961, 125 So.2d 886 (garnishment) with Martin v. Arrow Cabs, Inc., Fla.App. 1958, 107 So.2d 394, 396 (automobile crash), and Gordon v. Gordon, Fla. 1952, 59 So.2d 40, 44 (divorce).
Assuming that both privity and mutuality of remedy were established, then we would decline to apply the doctrine of collateral estoppel. See generally: "Res Judicata as Subject to Exception When its Application Would be Opposed to Public Policy," 88 L.Ed. 389; Declaration of Rights, § 21, Fla. Const., F.S.A. One aspect of the public policy question is that to decide otherwise might, in the future, facilitate the perpetration of fraud or capitalize upon indifference by substituting a judgment-proof party for a highly liquid one.
On the whole, then, we express the opinion that the forgery issue on remand should be fully litigated by these parties and not concluded solely upon the basis of the judgment in the prior in personam action. We rest our decision, however, upon the error committed in granting a directed verdict at the close of all evidence.
Reversed.