927 So.2d 157 (2006)
Michelle MASS, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D06-71.
District Court of Appeal of Florida, Third District.
April 26, 2006.
*158 Bennett H. Brummer, Public Defender, and Roy A. Heimlich, Assistant Public Defender, for appellant.
Charles J. Crist, Jr., Attorney General, and Charles M. Fahlbusch, Assistant Attorney General, for appellee.
Before GERSTEN, RAMIREZ, and SHEPHERD, JJ.
RAMIREZ, J.
Michelle Mass appeals from an order of involuntary commitment and the denial of her motion for leave to file amended exceptions. We reverse because the trial court's order of involuntary commitment is based upon a claim by appellee State of Florida which had been previously decided and was therefore barred by res judicata and collateral estoppel.
The Administrator of Aventura Hospital first petitioned for the involuntary placement *159 of Mass in "Aventura Hospital and Medical Center" on October 6, 2005. The petitioner alleged that Mass: suffered from an apparent or manifest mental illness; had refused voluntary placement for treatment; was unable to determine for herself whether placement was necessary; was manifestly incapable of surviving alone or with the help of willing and responsible family or friends; without treatment, was likely to suffer from neglect or refuse to care for herself, and that such neglect or refusal posed a real and present threat of substantial harm to her well-being; or that there was a substantial likelihood that in the near future she would inflict serious bodily harm on herself or another person as evidenced by recent behavior causing, attempting, or threatening such harm. Two psychiatric opinions from Dr. Gary Kushner and Dr. Ioan Pop supported the petition.
At the hearing on the petition on October 11, 2005, a number of witnesses testified including Mass, Dr. Kushner, Dr. Ivan Hernandez, James Butts (clinical worker of the Intense Psychiatric Unit at Aventura Hospital Medical Center), and Mass' mother. Dr. Kushner recommended long term hospitalization in a State Hospital. Butts testified that Mass told him that she wanted to die. Mass' mother stated that Mass had grabbed her, and also told her that she wanted to die and that she was going to kill herself.
In its Report and Recommendation dated October 11, 2005, Magistrate Hickey found that the State had failed to prove by clear and convincing evidence the necessary criteria for involuntary placement, and dismissed the petition. That same day, the State moved to file exceptions to the report and recommendation.
The next day, the Administrator of Aventura Hospital filed a new petition for the involuntary placement of Mass in "South Florida State Hospital." The petition contained the same allegations as the grounds stated in the State's first petition. Two psychiatric opinions offered by Dr. Kushner and Dr. Pop supported the petition. A transfer evaluation from another psychiatrist also supported the petition. Dr. Kushner observed that Mass had "been very agitated angry, belligerent, depressed & irrational, delusional thinking recently threatening suicide history of non compliance poor insight & judgment." Dr. Pop observed that Mass had "poor judgment and insight. Poor reality  depressed (illegible) affect  hostile unstable & paranoid delusional persecutory type. Disorganized behavior. Speech slow & (illegible)." Dr. Hernandez opined that Mass had "not been able to stay out of the pattern of repeated inpatient psychiatric hospitalizations due to frequent threats to harm herself, paranoid persecutory delusions as well as impaired insight and judgment."
At the hearing on the second petition on October 18, 2005, Dr. Kushner, Dr. Hernandez, Mass' mother, and Mass testified. Additionally, Mass' father and Susana Martinez, the hospital support coordinator for the Department of Head, Brain, and Spinal Cord Injury Program, testified. Dr. Kushner again recommended long term hospitalization. Dr. Hernandez testified consistent with his testimony at the hearing on the first petition. Mass' mother testified that Mass had grabbed and bruised her wrists, and had done something to her fingers. Mass' father testified that he never called Mass because he did not want to be abused. Martinez testified that Mass did not comply with the programs offered to her and that she fails to take her medications.
In its Report and Recommendation dated October 18, 2005, Magistrate Kimler found that the State proved by clear and *160 convincing evidence the necessary criteria for involuntary placement.
Having obtained a more satisfactory outcome with Magistrate Kimler, on October 20, 2005, the State withdrew its exceptions to Magistrate Hickey's Report. Thus, the circuit court approved Magistrate Hickey's report and recommendation on October 21, 2005, finding that the State did not present clear and convincing evidence to support its petition.
Mass, in turn, filed her exceptions to Magistrate Kimler's Report on November 2, 2005. The exceptions expressly referred to the termination of the prior proceeding in Mass' favor.
After the court heard the exceptions, but before it issued its ruling on the exceptions, Mass moved for leave to file amended exceptions arguing that the petition was barred by res judicata and collateral estoppel because the State had not alleged or proved any circumstance, conduct or medical condition arising after the filing of the first petition.
On December 15, 2005, the court approved Magistrate Kimler's report and recommendation, and overruled Mass' exceptions to the report, finding that the magistrate's report and recommendation was supported by competent and substantial evidence. The court denied Mass' motion to file amended exceptions on December 20, 2005.
Res judicata and collateral estoppel bar the claims raised in the second petition. The Florida Supreme Court, in Gordon v. Gordon, 59 So.2d 40 (Fla.1952), stated the law of res judicata and collateral estoppel: "under res judicata a final decree of judgment bars a subsequent suit between the same parties based upon the same cause of action and is conclusive as total matters germane thereto that were or could have been raised." See Gordon, 59 So.2d at 44. See also State v. McBride, 848 So.2d 287 (Fla.2003). The principle of collateral estoppel applies "where the two causes of action are different, in which case the judgment in the first suit only estops the parties from litigating in the second suit issues ... common to both causes of action and which were actually adjudicated in the prior litigation." See Gordon, 59 So.2d at 44. The essence of estoppel by judgment is "that it be made certain that the precise facts were determined by the former judgment." Id. (emphasis in the original). For purposes of collateral estoppel, the facts are the same when they are shown by the same testimony or evidence. Id.
The claims raised in the second petition are identical to those raised in the first petition. Additionally, the testimony presented at the hearing on the second petition is essentially the same as that which the State presented or could have presented at the hearing on the first petition. The testimony of Mass' father and Martinez (the social worker), both of whom did not testify at the hearing on the first petition and presented testimony at the hearing on the second petition, only referred to behavior and events that occurred prior to the hearing on the first petition. The record indeed does not reflect any new developments that occurred subsequent to the proceedings on the first petition. The claims are further unsupported by competent and substantial evidence that arose subsequent to the filing of the first petition.
We disagree with the State that Mass waived the res judicata and collateral estoppel defenses because she failed to plead them in a timely manner and did so after the entry of the final order on appeal. The record simply does not support this proposition. Although Mass may not have used the words "res judicata" or "collateral *161 estoppel," her exceptions expressly referred to the favorable termination of the prior proceeding with Magistrate Hickey. Furthermore, Mass served her motion for leave to file amended exceptions on December 15, 2005, which the court summarily denied on December 20, 2005.
"A party may, with leave of court, amend a pleading at or even after a hearing and ruling on a motion for summary judgment. According to Florida Rule of Civil Procedure 1.190(a), `Leave of court [to amend pleadings] shall be given freely when justice so requires.'" Yun Enters., Ltd. v. Graziani, 840 So.2d 420, 422 (Fla. 5th DCA 2003) (citations omitted). "Leave to amend should be freely given, the more so ... when the amendment is based on the same conduct, transaction and occurrence upon which the original claim was brought." Spolski Gen. Contractor, Inc. v. Jett-Aire Corp. Aviation Mgmt. of Cent. Fla., Inc., 637 So.2d 968, 970 (Fla. 5th DCA 1994) (citing Firestone Tire & Rubber Co. v. Thompson Aircraft Tire Corp., 353 So.2d 137, 141 (Fla. 3d DCA 1977)). The decision whether to allow the amendment of a pleading is within the trial court's discretion. Graziani, 840 So.2d 420. "However, the trial court's discretion should be exercised in accordance with the public policy of this state to freely allow amendments so that cases may be resolved on their merits." Craig v. E. Pasco Med. Ctr., Inc., 650 So.2d 179, 180 (Fla. 2d DCA 1995).
Dausman v. Hillsborough Area Reg'l Transit, 898 So.2d 213, 215 (Fla. 2d DCA 2005). See also Geer v. Jacobsen, 910 So.2d 391, 393 (Fla. 2d DCA 2005)(stating that "refusal to allow an amendment constitutes an abuse of discretion unless it clearly appears that the amendment would prejudice the opposing party, the privilege to amend has been abused, or amendment would be futile."), quoting from Carter v. Ferrell, 666 So.2d 556, 557 (Fla. 2d DCA 1995). Although Mass first raised the defenses subsequent to the hearing on the exceptions held on November 28, 2005, the State made no attempt to show prejudice as a result of any delay, the privilege has not been abused and the amendment would not be futile.
We therefore reverse and remand.