667 So.2d 315 (1995)
Frederick CHAMPLOVIER, Appellant/Cross-Appellee,
v.
CITY OF MIAMI, Appellee/Cross-Appellant.
No. 93-710.
District Court of Appeal of Florida, First District.
October 12, 1995.
As Amended on Motion for Clarification December 19, 1995.
*316 George M. Nachwalter, Andrew B. Sapiro, and Joseph C. Segor, Miami, for Appellant/Cross-Appellee.
A. Quinn Jones, III, City Attorney; Ramon Irizarri and Kathryn S. Pecko, Assistant City Attorneys, Miami, for Appellee/Cross-Appellant.
EN BANC
PER CURIAM.
Frederick Champlovier was injured in 1978 in a compensable accident. His claim for disability compensation from the City of Miami was followed by a stipulation of the parties that his average weekly wage at the time of the accident was $335.71. The stipulation was approved by the deputy commissioner in his order on temporary total disability in 1981, in which he adjudicated the amount of disability compensation. Champlovier was subsequently accepted as permanently and totally disabled after reaching maximum medical improvement.
Champlovier now seeks a redetermination of his average weekly wage to enhance his benefits as a result of the decision in Barragan v. City of Miami, 545 So.2d 252 (Fla. 1989). It appears from the record that he knew or believed at the time of the stipulation that the average weekly wage was higher than that to which he agreed. It follows that there is no evidence of fraud, misrepresentation, or other circumstance that would render the stipulation void. The judge of compensation claims ruled with the City of Miami and held that the 1981 compensation order was conclusive on the issue of average weekly wage. We agree and affirm.
The parties to this litigation stipulated to the exact amount of average weekly wage in 1981 thus obviating the need for proof on this issue. Average weekly wage was, nevertheless, an issue because the compensation rate could not have been set without it. Section 440.14(1), Florida Statutes (1977), provided that "... the average weekly wages of the injured employee at the time of the injury shall be taken as the basis upon which to compute compensation... ." The issue of average weekly wage was a necessary element of the claim for disability compensation in 1981 and remains so today for the same injury occurring in 1978. It is many years too late to modify the 1981 order under section 440.28, Florida Statutes (1977). Battle v. General Sand and Stone, 478 So.2d 396 (Fla. 1st DCA 1985). The principle of estoppel by judgment bars going behind the 1981 order to relitigate the same issue whether the claim is identical or collateral. Gordon v. Gordon, 59 So.2d 40 (Fla. 1952). The policy in Florida which strongly favors finality of judgments is applicable whether a judgment is reached through contest or consent. Arrieta-Gimenez v. Arrieta-Negron, 551 So.2d 1184 (Fla. 1989).
ZEHMER, C.J., and ERVIN, JOANOS, BARFIELD, ALLEN, WOLF, KAHN, WEBSTER, MICKLE, DAVIS and VAN NORTWICK, JJ., concur.
BENTON, J., dissents with opinion in which BOOTH, MINER and LAWRENCE, JJ., concur.
BENTON, J., dissenting.
On the authority of section 440.21, Florida Statutes (1993), as construed in Barragan,[1] Mr. Champlovier, a former Miami police officer twice injured in the line of duty, instituted the present proceeding. The City concedes *317 that Barragan controls. The majority opinion mischaracterizes the present proceeding as an improper effort to overturn a compensation order in no way assailed here. The present proceeding is separate and distinct from the 1981 proceeding[2] in which temporary partial disability benefits were awarded. Mr. Champlovier does not seek modification of an order under section 440.28, Florida Statutes (1993).
What Mr. Champlovier seeks in the present proceeding is to enforce an award of permanent total disability benefits, the amount of which he has never questioned. He presents a new and discrete claim asserting that, in offsetting his workers' compensation benefits against his pension, the City deprived him de facto of the benefits it ostensibly undertook to pay in 1982. He seeks an "increase [in] the amount of workers' compensation to offset illegal deductions [from his pension benefits] made on the account of the payment of workers' compensation benefits." Barragan, 545 So.2d at 253.
In the initial proceeding, the amount of his average weekly wages was not at issue in the same way as it now is: At that time, Mr. Champlovier was eligible for the same workers' compensation benefits, whether his average wages were at or above the stipulated level. Because the parties stipulated, in the workers' compensation proceeding on the claims for temporary benefits, that his average weekly wage was $335.71, he received what was then the maximum workers' compensation disability benefit awardable. Later accepted administratively as permanently totally disabled, Mr. Champlovier began receiving workers' compensation benefits on account of his permanent total disability in August of 1982.
He first received City disability pension benefits in May of 1982. From 1982 through 1989, the City paid full workers' compensation benefits ($126 weekly), but reduced his disability pension benefits by the exact amount of his workers' compensation benefits. On July 14, 1989, the supreme court ruled offsets of this kind illegal, but laid down a new rule permitting the City to reduce disability pension benefits to the extent the sum of disability pension benefits and workers' compensation benefits exceeds "average monthly wage." Barragan v. City of Miami, 545 So.2d 252, 255 (Fla. 1989). Only with the Barragan decision did the question of whether Mr. Champlovier's average weekly wage had exceeded $335.71 take on the legal and practical significance it now has, because only since the Barragan decision has the City been authorized, when "the total of the two exceeds the employee's average monthly wage," Barragan, 545 So.2d at 255, to reduce pension benefits to the extent of the excess.
The City concedes that it illegally reduced appellant's pension benefits by deducting all of his workers' compensation benefits, but argues it was entitled to reduce Mr. Champlovier's monthly pension benefit by $470.92, contending that was the amount by which his combined monthly benefits exceeded the average monthly wage stated in (or inferable from) the 1981 stipulation. Appellant alleges that his average weekly wage was actually $564.37, but that he did not make an issue of *318 it in 1981 because it would not have increased his workers' compensation benefits. The judge of compensation claims ruled for the City, deciding that a workers' compensation order[3] entered in the initial proceeding on December 9, 1981, which recognized the stipulation, was conclusive on the issue of average weekly wages.
In denying appellant's motion to reopen the issue of average weekly wages, the judge of compensation claims cited Battle v. General Sand and Stone, 478 So.2d 396 (Fla. 1st DCA 1985), Yovan v. Burdines, 81 So.2d 555 (Fla. 1955), and Plymouth Citrus Products Co-op v. Williamson, 71 So.2d 162 (Fla. 1954). These cases stand for the important but inapposite[4] proposition that a final order awarding compensation benefits should not be revisited after time for appeal expires,[5] absent modification on account of "a change in condition or because of a mistake in a determination of fact." § 440.28, Fla. Stat. (1993).

Amount of Excess of Disability Pension Benefits and Workers' Compensation Benefits Over Average Monthly Wage Never Decided
Because the present proceeding arises on a different "cause of action" than those litigated in the prior proceedings, no prior order should preclude litigation of the claim appellant now raises. The "cause of action" or theory supporting the present claim was not even available to appellant prior to the decision in Barragan, which overturned the decisions in City of Miami v. Knight, 510 So.2d 1069 (Fla. 1st DCA), review denied, 518 So.2d 1276 (Fla. 1987) and Hoffkins v. City of Miami, 339 So.2d 1145 (Fla. 3d DCA 1987). The supreme court decided Barragan after the parties' prior workers' compensation proceedings had concluded. Even a casual reading of Gordon v. Gordon, 59 So.2d 40 (Fla. 1952), on which the majority relies, refutes the contention that any prior adjudication between these parties precludes consideration of the present claim.[6]
Estoppel by judgment or collateral estoppel is equally inappropriate in the present circumstances.[7] The amount by which the *319 sum of disability pension and compensation benefits exceeds average monthly wages has never been litigated. With regard to collateral estoppel, it has been said, in a workers' compensation context:
It is also a settled rule that when the second suit is between the same parties, but based upon a different cause of action from the first, the prior judgment will not serve as an estoppel except as to those issues actually litigated and determined in it. Gordon [v. Gordon], 59 So.2d 40, 43 [(Fla.), cert. denied, 344 U.S. 878, 73 S.Ct. 165, 97 L.Ed. 680 (1952)]. Therefore, if the cause of action is not the same there will be no estoppel as to those issues which could have been litigated in the previous action [but were not].
Caron v. Systematic Air Servs., 576 So.2d 372, 375 (Fla. 1st DCA 1991), quoting Albrecht v. State, 444 So.2d 8, 11-12 (Fla. 1984). superseded by statute on other grounds as stated in Bowen v. Dep't of Envtl. Regulation, 448 So.2d 566 (Fla. 2d DCA 1984). Whether appellant's average weekly wage exceeded $335.71 could have been, but was not, litigated in any previous workers' compensation proceeding.[8]

*320 Underlying Stipulation Did Not Contemplate Barragan Decision

What remains is the question of the effect of the unadorned stipulation. The order in the original proceeding was predicated on a stipulation entered into in order to "expedit[e] the resolution of controversies," Steele v. A.D.H. Bldg. Contractors, Inc., 174 So.2d 16, 19 (Fla. 1965), as to appellant's entitlement to temporary disability benefits. The parties could not possibly have intended to be bound for purposes of litigation (that did not start until eight years later) on a cause of action not even in existence at the time the stipulation was made. The parties' intentions in this respect should be honored by recognizing this commonsense limitation on the stipulation.
It would be manifestly unjust to enforce the 1981 average weekly wage stipulation,[9] if indeed the stipulation is belied by the evidence, since the parties could not have anticipated this use of the stipulation. The parties' acquiescence to an agreed average weekly wage in the prior proceeding ensured appellant the maximum available compensation benefits. Another course might have precipitated apparently useless litigation.[10] Neither party intended the stipulation to effect a limitation on appellant's pension benefits or to control issues neither knew would be litigated in a new proceeding begun more than eight years later.
Appellant has shown "good cause" within the meaning of Florida Rule of Workers' Compensation Procedure 4.130 for the judge of compensation claims to allow evidence as to his average weekly wages, even if the stipulation could be viewed as contemplating a Barragan claim. Although a judge of compensation claims "need not inquire beyond the stipulation or agreement," he is authorized to "abrogate any stipulation which appears to be manifestly contrary to the evidence." Fla.R.Work.Comp.P. 4.130.
Here the judge of compensation claims refused even to consider whether evidence offered below showed the parties' 1981 stipulation in a separate proceeding to be contrary to fact. At the hearing on July 23, 1992, Robert Klausner, who represented Mr. Champlovier in disability pension litigation against the City, testified that the City had purportedly stipulated to a higher average weekly wage in that case. Although Mr. Klausner could not remember the exact amount of the wages to which the City stipulated, he stated that he believed that they were "$560-something dollars a week." Mr. *321 Klausner testified that this figure was arrived at by utilizing a workers' compensation calculation. The "Report of the Retirement System and Plan Administrator to the Actuary," also offered in evidence on July 23, 1992, lists Mr. Champlovier's "Average Final Monthly Compensation (Best 2 Year Average)" as $2059 in City salary alone, exclusive of benefits which should be included for purposes of calculating workers' compensation benefits.
It is not, of course, for an appellate court to evaluate such evidence in the first instance. The case should be remanded[11] to provide the judge of compensation claims an opportunity to decide the correct amount of the reduction authorized by Barragan, if any. On remand, the judge of compensation claims should order the City to pay Mr. Champlovier the full benefits to which he is entitled under section 440.21, Florida Statutes (1993).

ON MOTION FOR CLARIFICATION
PER CURIAM.
City of Miami asks this court for clarification of its opinion filed October 12, 1995, contending the court overlooked its cross-appeal challenging the award of interest on retroactive pension offsets for the period of August 29, 1982 through July 31, 1989. The City of Miami is correct. Accordingly, we supplement our previously filed opinion dated October 12, 1995, by reversing the award of interest on retroactive pension offsets for the period of August 29, 1982 through July 31, 1989, on the authority of City of Miami v. Bell, 634 So.2d 163 (Fla. 1993).
ZEHMER, C.J., and ERVIN, BOOTH, JOANOS, BARFIELD, MINER, ALLEN, WOLF, KAHN, WEBSTER, MICKLE, LAWRENCE, DAVIS, BENTON and VAN NORTWICK, JJ., concur.
NOTES
[1] The decision in Barragan v. City of Miami, 545 So.2d 252 (Fla. 1989), proscribed offsetting workers' compensation benefits against City disability pensions, but did allow reductions to the extent combined compensation and disability benefits would otherwise exceed wages earned before the disability injury.
[2] Workers' compensation cases may entail multiple proceedings. Appellant sought temporary total disability benefits in the wake of his second injury in the line of duty on September 12, 1978. In a separate proceeding, he sought permanent total disability benefits. The present proceeding is the third that appellant has initiated. The 1980 Committee Note to Rule 4.160, Florida Rules of Workers' Compensation Procedure (1993), recognizes that a single compensable injury, because of an injured worker's various entitlements,

can engender successive issues as to medical treatment, the entitlement to temporary disability benefits, the entitlement to permanent disability benefits, as well as ancillary issues of penalties, costs, attorney fees and some other rather exotic issues. These can result in successive hearings and successive orders which are all equally final.
The parties may enter stipulations in any one of such successive proceedings. In cases involving, for example, entitlement to medical treatment and entitlement to compensation benefits, the parties may stipulate to factual matters of foreseeable, recurrent importance in order to simplify litigation on more than one foreseeable claim. As discussed infra, however, the present claim was not foreseeable before Barragan was decided.
[3] No copy of the December 9, 1981 order is in the record, but the judge of compensation claims took judicial notice of it.
[4] Unlike the litigants in Battle, Yovan, and Williamson, Mr. Champlovier does not seek to reopen the average weekly wage issue in order to litigate or revise the amount of the original award of compensation benefits; if he were seeking to begin the original proceeding anew, the 1981 order predicated on the stipulation would be an insurmountable impediment.
[5] In Battle, for example, the claimant alleged in the pretrial stipulation an average weekly wage of $975, while the employer and the carrier listed the average wage as $505. The parties stipulated that the compensation rate was the then maximum of $126 per week; a 1983 final order found an average weekly wage of $550 and awarded the maximum compensation rate. Id. No appeal was taken. In 1984, the employer and the carrier successfully petitioned the deputy commissioner to amend the final order to reflect an average weekly wage of $136.67 per week and a corresponding compensation rate of $82 per week. Id. We reversed, holding that, in the absence of a direct appeal, the 1983 final order could be amended only upon a showing of a "mistake in the determination of a fact." Id., citing § 440.28 Fla. Stat. (1975).
[6] In Gordon v. Gordon, 59 So.2d 40 (Fla. 1952), a divorce decree based on "constructive desertion" was upheld against the contention that a previous, adverse decree rendered the matter res judicata. The court concluded that the prior decree had been predicated on a different cause of action ("indignities to the person").

Here the two causes of action are even more distinct. The original claim was under section 440.15, Florida Statutes, while the claim that gave rise to the present appeal arises under section 440.21, Florida Statutes.
[7] The Gordon court rejected the contention that "estoppel by judgment" (collateral estoppel) should prevent proof of certain facts necessary to the wife's new cause of action ("constructive desertion"), saying:

Although dissertations have come to our attention in which the doctrine of res adjudicata is considered as a sub-division or branch of the law of estoppel, strictly and technically speaking, such treatment is not proper. The former is founded upon the sound proposition that there should be an end to litigation and that in the interest of the State every justiciable controversy should be settled in one action in order that the courts and the parties will not be pothered for the same cause by interminable litigation. On the other hand, estoppel rests upon equitable principles. 50 C.J.S., Judgments, § 593. Even so, the ultimate purpose of estoppel by judgment is to bring litigation to an end. The difference which we consider exists between res adjudicata and estoppel by judgment in that under res adjudicata a final decree of judgment bars a subsequent suit between the same parties based upon the same cause of action and is conclusive as to all matters germane thereto that were or could have been raised, while the principle of estoppel by judgment is applicable where the two causes of action are different, in which case the judgment in the first suit only estops the parties from litigating in the second suit issues  that is to say points and questions  common to both causes of action and which were actually adjudicated in the prior litigation.
Gordon, 59 So.2d at 44. What does "actually adjudicated" mean? The Gordon court answers:
If the second suit is bottomed upon a different cause of action than that alleged in the prior case estoppel by judgment comes into play and only those matters actually litigated and determined in the initial action are foreclosed  not other matters which "might have been, but were not, litigated or decided." Prall v. Prall, 58 Fla. 496, 50 So. 867, 870, 26 L.R.A., N.S., 577; Bagwell v. Bagwell, supra.
Id. at 43. While the court says "actually litigated," it does not expressly address the question of collateral estoppel predicated on a stipulation. This question is, however, discussed in the restatement. Last December our supreme court quoted with approval the following:
Moreover, a judgment by consent, though it terminates a claim to which it refers, is not an actual adjudication. See § 27, Comment e. The considerations that lead to denying issue preclusive effect to consent judgments, chiefly the encouragement of settlements ...
JFK Medical Ctr., Inc. v. Price, 647 So.2d 833, 834 n. 1 (Fla. 1994). Because the amount of average weekly wages was stipulated and never litigated, determination of the issue in the proceeding on Champlovier's first claim does not preclude litigation of the issue (for the first time) on Champlovier's second claim.
[8] Nor was the amount of the 1981 award dependent upon the determination of the amount of the excess, if any. Under general principles of collateral estoppel, "if issues are determined but the judgment is not dependent upon the determinations, relitigation of those issues in a subsequent action between the parties is not precluded." Restatement (Second) of Judgments § 27 cmt. h (1982). The Restatement also teaches that:

A judgment is not conclusive in a subsequent action as to issues which might have been but were not litigated and determined in the prior action. There are many reasons why a party may choose not to raise an issue, or to contest an assertion, in a particular action. The action may involve so small an amount that litigation of the issue may cost more than the value of the lawsuit. Or the forum may be an inconvenient one in which to produce the necessary evidence or in which to litigate at all. The interests of conserving judicial resources, of maintaining consistency, and of avoiding oppression or harassment of the adverse party are less compelling when the issue on which preclusion is sought has not actually been litigated before. And if preclusive effect were given to issues not litigated, the result might serve to discourage compromise, to decrease the likelihood that the issues in an action would be narrowed by stipulation, and thus to intensify litigation.
It is true that it is sometimes difficult to determine whether an issue was actually litigated; even if it was not litigated, the party's reasons for not litigating in the prior action may be such that preclusion would be appropriate. But the policy considerations outlined above weigh strongly in favor of nonpreclusion, and it is in the interest of predictability and simplicity for such a result to obtain uniformly.
....
An issue is not actually litigated if the defendant might have interposed it as an affirmative defense but failed to do so; nor is it actually litigated if it is raised by a material allegation of a party's pleading but is admitted (explicitly or by virtue of a failure to deny) in a responsive pleading; nor is it actually litigated if it is raised in an allegation by one party and is admitted by the other before evidence on the issue is adduced at trial; nor is it actually litigated if it is the subject of a stipulation between the parties. A stipulation may however, be binding in a subsequent action between the parties if the parties have manifested an intention to that effect.
Id. at cmt. e. These parties manifested no intention to be bound for purposes of post-Barragan claims under section 440.21, Florida Statutes.
[9] Our supreme court held in Steele v. A.D.H. Bldg. Contractors, Inc., 174 So.2d 16, 19, that a stipulation made in a workmen's compensation case should not be set aside "in the absence of fraud, overreaching, misrepresentation, or withholding of facts by the adversary, or some such element that would render the agreement void." In Steele, however, as in each of the cases cited by the City for the proposition that a stipulation is binding (absent one of the Steele factors), the court enforced a stipulation made in the course of litigating a claim which was contemplated at the time the stipulation was entered. Fawaz v. Florida Polymers, 622 So.2d 492 (Fla. 1st DCA 1993); Williams v. Kraft, Inc., 585 So.2d 1120, 1121 (Fla. 1st DCA 1991); Myrick v. Gillard Grove Serv., 577 So.2d 655, 656 (Fla. 1st DCA 1991); Gus Stephens Drywall v. Durr, 569 So.2d 844 (Fla. 1st DCA 1990); Howard Johnsons v. Pineda, 560 So.2d 336 (Fla. 1st DCA 1990); I.A.T.S.E. v. Nesselroad, 534 So.2d 709 (Fla. 1st DCA 1988); City of Vero Beach v. Thomas, 388 So.2d 1374 (Fla. 1st DCA 1980).
[10] Cf. Travelers Ins. Co. v. VES Serv. Co., 576 So.2d 1349 (Fla. 1st DCA 1991), where Burger King stipulated with an injured patron that it exercised exclusive possession and control over the surveillance camera that caused the injury. The parties intended the stipulation as an admission of liability on the part of Burger King. In a subsequent indemnification/contribution suit by Burger King's liability insurer against VES, the camera's lessor and installer, VES successfully moved for summary judgment on the ground that Burger King was bound by its prior stipulation of negligence. Id. at 1350. On appeal, the Travelers court reversed the summary judgment, holding that Burger King's admission of liability was not intended as a concession of "active negligence" that would preclude recovery by Travelers against VES. Id. at 1350-51. The court ruled that a stipulation "is not to be construed technically, but rather in accordance with its spirit, in furtherance of justice, in light of the circumstances surrounding the parties, and in view of the result that they were attempting to accomplish." Id., quoting 2 Fla.Jur.2d, Agreed Case and Stipulations, § 6.
[11] On cross-appeal, the City challenges the award of prejudgment interest. The City has conceded that it is not entitled to recover the money it has already paid to Mr. Champlovier under the appealed order. The award of prejudgment interest, insofar as it includes interest on pre-Barragan offsets, should be reversed, because our supreme court has rejected the view that Barragan applies retroactively. City of Miami v. Bell, 634 So.2d 163 (Fla. 1994). The present appeal was "in the pipeline" when the decision in Bell was handed down.